JOHN H. DONBOLI (SBN: 205218)
E-mail: jdonboli@delmarlawgroup.com
JL SEAN SLATTERY (SBN: 210965)
E-mail: sslattery@delmarlawgroup.com
DEL MAR LAW GROUP, LLP
12250 El Camino Real, Suite 120
San Diego, CA 92130
Telephone: (858) 793-6244
Facsimile: (858) 793-6005

JONATHAN W. CUNEO
E-mail: jonc@cuneolaw.com
TAYLOR ASEN
E-mail: tasen@cuneolaw.com
CUNEO GILBERT & LaDUCA, LLP
507 C Street, NE
Washington, DC 20002
Telephone: (202) 789-3960
Facsimile: (202) 789-1813

Attorneys for Plaintiff: GARY HOFMANN, an individual and on behalf of all others similarly situated

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY HOFMANN, an individual and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>FIFTH GENERATION, INC., a Texas corporation; and DOES 1 through 100, inclusive,<br><br>        Defendants. | Civil Action No.:14-cv-2569-JM-JLB<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>Date:  February 9, 2015<br>Time:  10:00 a.m.<br>Courtroom: 5D |

# **TABLE OF CONTENTS**

INTRODUCTION………………..…………………………..………………..…1

FACTUAL BACKGROUND……………………………..…………………….…3

LEGAL ARGUMENT……..……………………….…..…………………….…4

I.    FG Improperly Relies on Facts Outside the Complaint………………..….4

II.   California's Safe Harbor Defense Does Not Preclude This Action…………5

III.  Plaintiff Has Stated Claims Under the UCL, CLRA, and FAL………..…..10

      A.    Plaintiff May Rely Upon the *Forbes* Article in
          His Complaint ……………….……………………..……….10

      B.    The FAC Plausibly Alleges that "Handmade" Would Deceive a
          Reasonable Consumer. ……………………………..………….…12

          1.    "Handmade" Is Not Non-Actionable Puffery……………....14

          2.    A Reasonable Consumer Could Plausibly Believe
              that Vodka Was "Handmade."……………………………..15

          3.    Other Portions of the Label Do Not Preclude
              the Reasonable Consumer from Believing Tito's
              is "Handmade."…………………………………………….17

      C.    Plaintiff's Lack of Privity with FG Is Irrelevant……………………18

      D.    Plaintiff Has Adequately Alleged an Injury…………………………19

      E.    The FAC satisfies Rule 9(b)………………………………………...20

IV.  Plaintiff Has Alleged a Claim for Negligent Misrepresentation……..…….22

V.   FG's Attempt to Defeat a Nationwide Class Is Premature………………...24

ALTERNATIVE LEAVE TO AMEND…………………………………………25

CONCLUSION………………………………………………………………...25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Accord Fair Wind Sailing, Inc. v. Dempster*

    764 F.3d 303, 312 (3d Cir. 2014)………………………………………………..11

*Alvarez v. Chevron Corp.*

    656 F.3d 925, 934 (9th Cir. 2011)…………………………………......…7, 8

*Anschutz Corp. v. Merrill Lynch & Co. Inc.,*

    785 F. Supp. 2d 799, 827 (N.D. Cal. 2011)………………………………..22

*Anunziato v. eMachines, Inc.*

    402 F. Supp. 2d 1133, 1140 (C.D. Ccal. 2005)……………………………14

*Aschcroft v. Iqbal*

    555 U.S. 662, 680 (2009)………………………………………....……...12

*Astiana v. Ben & Jerry's Homemade, Inc.,*

    No. C 10-4387 PJH, 2011 WL 2111796, at *6 (N.D. Cal. May 26, 2011)………………………………………………………..……21

*Beaver v. Tarsadia Hotels,*

    No. 11CV1842-GPC KSC, 2014 WL 3002297, at *3 (S.D. Cal. July 2, 2014)…………………………………………………..……5

*Carrea v. Dreyer's Grand Ice Cream, Inc.,*

    No. C 10-01044 JSW, 2011 WL 159380, at *2 (N.D. Cal. Jan. 10, 2011), aff'd, 475 F. App'x 113 (9th Cir. 2012)…………....……………………19

*Chacanaca v. Quaker Oats Co.,*

    752 F. Supp. 2d 1111, 1125 (N.D. Cal. 2010)………………..……16, 18, 20

*Cook, Perkiss and Liehe v. N. Cal. Collection Serv., Inc.,*

    911 F.2d 242, 246 (9th Cir. 1990)…………………………....……………..14

-ii-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

## <u>(cont'd)</u>

**Page(s)**

*Cornerstone Propane Partners, L.P. Sec. Litig.,*

    355 F. Supp. 2d 1069, 1087–88, 1126 (C.D. Cal. 2005)……………......14

*Czuchaj v. Conair Corp.,*

    No. 13-CV-1901-BEN RBB, 2014 WL 1664235, at *9 (S.D. Cal. Apr. 18, 2014)………………………..…………………………………………24

*Davis v. HSBC Bank Nevada, N.A.,*

    691 F.3d 1152, 1165 (9th Cir. 2012)……………………………..…6, 7

*Dichter-Mad Family Partners, LLP v. United States,*

    709 F.3d 749, 751 (9th Cir. 2013)…………...……………………..11

*First Advantage Background Servs. Corp. v. Private Eyes, Inc.,*

    569 F. Supp. 2d 929, 942 (N.D. Cal. 2008)……………….……………20

*Foman v. Davis,*

    371 U.S. 178, 182 (1962)…………………………….…………………25

*Forcellati v. Hyland's, Inc.,*

    876 F. Supp. 2d 1155, 1159 (C.D. Cal.2012)………………………25

*Freeman v. Time, Inc.,*

    68 F.3d 285 (9th Cir. 1995)...………………………..…………….13, fn 1

*Gager v. United States,*

    149 F.3d 918, 922 (9th Cir. 1998)…………………………………11

*Hinojos v. Kohl's Corp.,*

    718 F.3d 1098, 1107-08 (9th Cir. 2013)………………………19, 20

*In re McKesson HBOC, Inc. Sec. Litig.,*

    126 F. Supp. 2d 1248, 1272 (N.D. Cal. 2000)…………….………11

-iii-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

### <u>(cont'd)</u>

<u>Page(s)</u>

*Mazza v. American Honda Motor Co, Inc.,*

666 F.3d 581 (9th Cir. 2012)……………………………….……...24

*Oestreicher v. Alienware Corp.,*

544 F.Supp.2d 964, 973 (N.D. Cal . 2008)………………..……………...14

*Petersen v. Allstate Idem. Co.,*

281 F.R.D. 413, 416-418 (C.D. Cal. 2012)…………………….....20, fn 1

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.,*

227 F.3d 489, 497 (5th Cir. 2000)……………………………....…..14

*Steiner v. Hale,*

868 F. Supp. 284, 286 (S.D. Cal. 1994)……………....…………………20

*Swartz v. KPMG LLP,*

476 F.3d 756, 763 (9th Cir. 2007)………………………………….…..5

*Tait v. BSH Home Appliances Corp.,*

289 F.R.D. 466, 480…………………………………………....………13

*Van Koenig v. Snapple Beverage Corp,*

713 F. Supp. 2d 1066, 1074 (E.D. Cal. 2010)……………..……………9

*Vignolo v. Miller,*

120 F.3d 1075, 1077 (9th Cir. 1997)………………………....……...12

*Werdebaugh v. Blue Diamond Growers,*

No. 12-CV-02724-LHK, 2013 WL 5487236, at *14 (N.D. Cal. Oct. 2, 2013)……………………………………..……………...21, 24

*Whitaker v. Thompson,*

248 F. Supp. 2d 1, 3 (D.D.C. 2002)………………………..………..9

-iv-

# TABLE OF AUTHORITIES

## (cont'd)

Page(s)

*Williams v. Gerber Prods. Co.,*

552 F.3d 934, 938 (9th Cir. 2008)……………………..………..13, 18 fn 1

**California Cases**

*Aron v. U-Haul Co. of California,*

143 Cal. App. 4th 796, 49 Cal. Rptr. 3d 555, 560 (2006)………..…......8 fn 1

*Cafasso, United States ex rel v. Gen. Dynamics C4 Sys., Inc.,*

637 F.3d 1047, 1055 (9th Cir. 2011)…………………………………………..20

*Cel–Tech Comm'cns, Inc. v. L.A. Cellular Tel. Co.,*

20 Cal.4th 163, 973 P.2d 527, 541 (Cal. 1999)………………...…….5, 6, 7

*Clayworth v. Pfizer, Inc.,*

49 Cal.4th 758, 788, 233 P.3d 1066 (2010)……………………..……19

*Glenn K. Jackson Inc. v. Roe,*

273 F.3d 1192, 1201 (9th Cir. 2001)……………………………………..22

*Herron v. Best Buy Stores, LP,*

No. 12-CV-02103-GEB-JFM, 2013 WL 4432019, at *3-4 (E.D. Cal. Aug. 16, 2013)……………………………………………..………………..19

*Jou v. Kimberly-Clark Corp.,*

No. C-13-03075 JSC, 2013 WL 6491158, at *7 (N.D. Cal. Dec. 10, 2013…………………………………………………………………13, 16

*Kwikset Corp. v. Superior Court,*

51 Cal. 4th 310, 330, 246 P.3d 877 (Cal. 2011)……………………...………19

## <u>TABLE OF AUTHORITIES</u>

## <u>(cont'd)</u>

**<u>Page(s)</u>**

*Linear Technology Corp. v. Applied Materials, Inc.,*

    152 Cal.App.4th 115, 61 Cal. Rptr. 3d 221, 236 (2007)…………............13

*Loeffler v. Target Corp.,*

    58 Cal.4th 1081, 324 P.3d 50, 85 (2014)…………………………………6

*Sanchez v. Aviva Life & Annuity Co.,*

    No. CIV.S09-1454 FCD/DAD, 2010 WL 2606670, at *4 (E.D. Cal. June 28, 2010)………………………………………………………….…12 fn 1

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.,*

    17 Cal.4th 553, 950 P.2d 1086, 1094 (1998)………………….....………..5

**California Statutes**

Civil Code § 1750 ("CLRA"), ………………….…………2, 3, 5, 7, 10, 12, 18, 19

Business & Professions Code § 17200 ("UCL")...……2, 3, 5, 6, 7, 8, 10, 12, 18, 19

Business & Professions Code § 17500 ("FAL")……………………2, 3, 10, 12, 19

**Other Authorities**

Louis Altman and Malla Pollack, *Callman on Unfair Competition, Trademarks and Monopolies*, § 5:42 (4th ed.)…...………………………..…….14, 15, 17

### INTRODUCTION

Defendant Fifth Generation, Inc. ("FG") manufactures, markets, and sells vodka commonly referred to and sold as "Tito's Handmade Vodka." Tito's has become an immensely popular spirit over the last several years. Its meteoric rise in sales and profitability stems in large part from FG's marketing, which taps into the American public's demand for "craft" and "artisanal" spirits.[1] That is, American consumers purchase Tito's not primarily for its quality or taste, but because it is presented as a "Handmade" vodka. Indeed, it is not just that it labels and advertises Tito's as "Handmade," but the word "Handmade" <u>is actually in the name of the product itself</u>. As it turns out, FG's claim that Tito's is "Handmade" is misleading and false. Unlike actual "Handmade" spirits, Tito's Handmade Vodka is made entirely by automated machines without any input by human hands.

On behalf of a nationwide class of Tito's purchasers, plaintiff Gary Hofmann ("Plaintiff") seeks recompense for the loss he suffered as a result of FG's misleading and false advertising, as well as an injunction prohibiting FG from continuing to market its vodka Tito's as "Handmade." Plaintiff alleges that FG's conduct violates California's Unfair Competition Law, codified at Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"), the Consumers Legal Remedies Act, codified at Cal. Civ. Code § 1750, *et seq.* ("CLRA"), and the False Advertising Law, codified at Cal. Bus. & Prof. Code § 17500, *et seq.* ("FAL"). Plaintiff also brings a common law claim for negligent misrepresentation.

Presently, FG moves this Court to dismiss Plaintiff's suit in its entirety for a variety of reasons. As detailed below, FG's arguments are without merit and, as such, this Court is proper in denying its motion. Simply stated, FG's motion to dismiss amounts to little more than an attempt to put before this Court its own version of the "facts" underlying this litigation. But at this stage, it is Plaintiff's

---

[1]    *See* CBS News, "Micro-boom: U.S. craft distilleries elevating American spirits," May 3, 2013, available at http://www.cbsnews.com/news/micro-boom-us-craft-distilleries-elevating-american-spirits/.

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT
14-cv-2569-JM-JLB

allegations and not FG's that carry the day. Once FG's procedurally improper counter-allegations are stripped away, the weakness of FG's arguments in support of dismissal become apparent.

First, FG argues that California's "safe harbor" defense bars Plaintiff's UCL and CLRA claims. The "safe harbor" defense, however, only bars claims when a statute or regulation *specifically* permits the allegedly deceptive practice in question (which is not the case here). FG essentially advocates for a fundamental expansion of the "safe harbor" defense so that it would bar any action simply because an agency approves deceptive content in a label.  Its position, however, is not supported by any case law as FG fails to cite to a single California case suggesting the "safe harbor" defense should be expanded so dramatically. Moreover, providing liquor manufacturers with immunity from consumer fraud suits based on Alcohol and Tobacco Tax and Trade Bureau's ("TTB") approval of their labels would unduly narrow California consumer laws and would encourage liquor manufacturers to deceive TTB and the public.  This is especially true of TTB approval because unlike, for example, the FDA's "rigorous" pre-approval process for drugs, the TTB's approval of alcohol labels hinges on self-reporting (i.e., the TTB relies upon the proverbial "scout's honor" from the manufacturer that its label is truthful and does nothing substantial to verify the veracity of the claim on its own in the way of pre-approval screening, etc.)

Next, FG makes several arguments as to why Plaintiff fails to state claims under the UCL, CLRA, and FAL. None of these claims have merit.  FG claims that the *Forbes* article on which some of Plaintiff's allegations are based is "hearsay" and "erroneous." Def.'s Mem. At 5 n.3, 16. But Plaintiff is permitted to base his allegations on "hearsay" at this time and any insistence by FG that the *Forbes* article contains factual inaccuracies is irrelevant at this stage of the litigation.

FG also argues that Plaintiff's consumer fraud claims fail as a matter of law because it is implausible that Plaintiff would rely on the FG's representation that

Tito's is "Handmade." This is not so because the First Amended Complaint alleges that Plaintiff (and other similarly situated) believed that Tito's was made by hand (not by automated machinery).  FG fails to convincingly explain why such an allegation is implausible.

FG also contends that Plaintiff's consumer fraud claims fail to meet Rule 9(b)'s heightened pleading standard.  This claim is also incorrect as Plaintiff has sufficiently pled the "who, what, why, when, and how" required under Rule 9(b). Despite FG's contention to the contrary, Rule 9(b) does not require Plaintiff to allege how often, or when he first, purchased Tito's.

FG next argues that Plaintiff's negligent misrepresentation fails because he cannot have reasonably relied on the "Handmade" representation after the 2013 publication of the *Forbes* article. But Plaintiff has not alleged that he viewed the *Forbes* article *before* purchasing Tito's, and FG's attempt to impute knowledge of the article to Plaintiff and other Tito's consumers falls flat.[2]

Finally, FG suggests that Plaintiff cannot represent a nationwide class. However, this argument is premature and relies upon a Ninth Circuit opinion that is, as other courts in this Circuit have noted, inapposite.

For these reasons, and others set forth below in greater detail, this Court should deny Defendant's motion to dismiss.

## **FACTUAL BACKGROUND**

FG is a corporation that is organized and exists under the laws of Texas. FAC at ¶ 3. FG manufactures, markets and sells Tito's Handmade Vodka. FAC at ¶ 10.

The Tito's label prominently claims that the product is "Handmade." FAC at ¶ 9. The label also suggests that Tito's is "Crafted in an Old Fashioned Pot Still by America's Oldest Microdistillery." FAC at ¶ 10.

---

[2]    The *Forbes* article was actually discovered *after* Plaintiff purchased offending Tito's brand vodka.

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT
14-cv-2569-JM-JLB

Tito's is actually not "Handmade" as that term would be understood by any reasonable consumer viewing the Tito's label. First, rather than making the neutral spirit from which Tito's is made from scratch, FG trucks in mass produced neutral grain sprit and pumps it into Tito's industrial facility. FAC at ¶ 13. A reasonable consumer would believe that a vodka purporting to be "Handmade" was produced from scratch, rather than from a mass produced neutral grain spirit. FAC at ¶ 13. Second, Tito's is "distilled in a large industrial complex, with modern, technologically advanced stills." FAC at ¶ 13. A reasonable consumer would believe that the vodka purporting to be "Handmade" was produced in a still without the use of automated, technologically advanced stills. FAC at ¶ 13. Finally, Tito's vodka is produced and bottled in extremely large quantities.  FAC at ¶ 13. However, a reasonable consumer would believe that a vodka purporting to be "Handmade" was produced in small batches. FAC at ¶ 13.

In August 2014, Plaintiff purchased Tito's Vodka at a San Diego BevMo! store. FAC at ¶ 15. Plaintiff purchased Tito's in reliance on the labels claim that Tito's was "Handmade." FAC at ¶ 16. Had Plaintiff known that Tito's was not in fact handmade, he would have paid a lesser price for a competing product, or would not have purchased it at all. FAC at ¶ 18.  In this regard, other purchasers of Tito's vodka have similarly relied on its deceptive labeling to their detriment. FAC at ¶¶ 16-18.

## LEGAL ARGUMENT

## I.   FG Improperly Relies on Facts Outside the Complaint.

Much of FG's motion to dismiss is predicated upon assertions of fact outside the four-corners of the FAC (facts that are also not the proper subject matter of judicial notice). Specifically, FG's Memorandum contains lengthy discussions concerning the supposed quality of Tito's vodka (Def.'s Mem. at 3), the supposed process by which Tito's is made (Def.'s Mem. at 4-6), and FG's supposed interactions with the TTB (Def.'s Mem. at 7-8).  As FG should know given the

1   exceptional quality of its counsel, "a court may generally consider only allegations

2   contained in the pleadings, exhibits attached to the complaint, and matters properly

3   subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir.

4   2007). Aside from the approved Tito's labels themselves, FG has not argued that

5   any of the additional facts set forth in its Memorandum are properly before this

6   Court. Therefore, this Court should disregard FG's discussion of "facts" stemming

7   from outside the FAC.

8   **II.    California's Safe Harbor Defense Does Not Preclude This Action.**

9          FG argues federal regulation prohibits liquor manufacturers from placing

10  false or misleading labels on their products and the issuance of a certificate of label

11  approval (or COLA) establishes that its label is in compliance with federal

12  regulation.  As its argument goes, the issuance of the COLA "creates a safe

13  harbor" to Plaintiff's claims under the UCL and CLRA. Def.'s Mem. at 12.  This

14  argument, however, misapplies the "safe harbor" defense.

15         Although California recognizes a "safe harbor" defense that precludes a

16  plaintiff from "plead[ing] around an absolute bar to relief simply by recasting the

17  cause of action as one for unfair competition," *Cel–Tech Communications, Inc. v.

18  L.A. Cellular Tel. Co.,* 20 Cal.4th 163, 182 (1999), the "safe harbor" defense is

19  actually very narrow.  *Beaver v. Tarsadia Hotels,* 2014 U.S. Dist. LEXIS 90600, 9

20  (S.D. Cal. July 1, 2014); *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042,

21  1048 (9th Cir. 2000).  "Under the safe harbor defense, '[t]o forestall an action under

22  the unfair competition law, another provision must actually 'bar' the action or

23  clearly permit the conduct.'" *Davis v. HSBC Bank*, 691 F.3d 1152, 1164 (9th Cir.

24  2012) citing *Cel-Tech*, at 183.

25         Said another way, California case law recognizes a "safe harbor" defense to

26  its consumer fraud statutes that precludes a plaintiff from "plead[ing] around an

27  absolute bar to relief simply by recasting the cause of action as one for unfair

28  competition." *Id*.; *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.,* 17 Cal.4th 553

1    (1998) [observing that the "UCL cannot be used to state a cause of action the gist

2    of which is absolutely barred under some other principle of law"]. Specifically, the

3    safe harbor rule prohibits consumer fraud cases in two circumstances. First, where

4    another state or federal statute "actually bar[s] the action or *clearly permit*[s] the

5    conduct" at issue. *Loeffler,* 58 Cal.4th at 1125; *see also Cel–Tech.,* 20 Cal.4th at 182

6    ["[A] plaintiff may not bring an action under the unfair competition law if some

7    other provision bars it."]. Second, where a regulation promulgated by a state or

8    federal agency "clearly permit[s]," or "indeed require[s]," the allegedly deceptive

9    behavior. *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1165 (9th Cir. 2012).

10   The rationale behind the safe harbor defense is self-evident: it is unfair and

11   impractical to expose an entity to private action for following state or federal law.

12         FG does not suggest that a statute or regulation "clearly permits" it to label

13   its vodka as "Handmade" when it is made by automated machinery, or that a

14   statute or regulations "deem[s] 'fair' as a matter of law" FG's conduct. Rather, it

15   argues that FG is protected by the safe harbor rule because the TTB approved its

16   label. Plaintiff will accordingly limit his argument to address the second prong.

17         FG cites to 27 C.F.R. §§ 5.34(a) and 5.42(a) for alcohol labeling

18   requirements.  Def.'s Mem. at 7.  27 C.F.R. § 5.34(a) states: "No label shall

19   contain any brand name, which, standing alone, or in association with other printed

20   or graphic matter, creates any impression or inference as to the age, origin,

21   identity, or other characteristics of the product unless the appropriate TTB officer

22   finds that such brand name (when appropriately qualified if required) conveys no

23   erroneous impressions as to the age, origin, identity, or other characteristics of the

24   product."  27 C.F.R. § 5.42(a)(1) states: "Bottles containing distilled spirits, or any

25   labels on such bottles, or any individual covering, carton, or other container of

26   such bottles used for sale at retail, or any written, printed, graphic, or other matter

27   accompanying such bottles to the consumer shall not contain … [a]ny statement

28   that is false or untrue in any particular, or that, irrespective of falsity, directly, or

by ambiguity, omission, or inference, or by the addition of irrelevant, scientific or technical matter, tends to create a misleading impression."

FG then argues "Congress has delegated to the TTB the function of reviewing and approving labels on alcoholic beverage products before they are even allowed to leave the bottling facility, much less become available for purchase by consumers."  Def.'s Mem. at 12.  It goes on to argue that "the TTB approved the precise element of Fifth Generation's labels at issue in the Amended Complaint."  *Id*.

Simply stated, FG takes the "safe harbor" defense too far and overlooks an important distinction. "'There is a difference between (1) not making an activity unlawful, and (2) making that activity lawful' and that only '[a]cts that the Legislature has determined to be lawful may not form the basis for an action under the unfair competition law.'"  *Torres v. JC Penney Corp.*, 2013 U.S. Dist. LEXIS 66506, 9-10 (N.D. Cal. May 8, 2013) citing *Cel-Tech*, at 183.

For example, in *Alverez v. Chevron Corp.*, 656 F.3d 925, 928 (9th Cir. 2011), the plaintiffs "alleged that Defendants use single-nozzle gasoline dispensers at their gas stations that are less expensive to install and maintain than the previous multi-nozzle variety."  They alleged these single-nozzle dispensers create a problem for purchasers of premium gasoline because a small amount residual fuel from the prior transaction is left behind.  *Id*.  The plaintiffs claim this problem could be remedied by implementing additional technology or corrective disclosures on the gas dispensers, and the failure to make these corrections constituted a violation of the UCL.  *Id*. at 928-929.

In *Alvarez*, the court held the "safe harbor" defense barred the claims.  The California Department of Food and Agriculture Division of Measurement adopted certain standards for gas dispensing devices.  *Id*., at 929. All gasoline dispensing stations must be certified, and "[t]o earn this certification, all facilities installed since 2003 must use single-nozzle, single-hose gasoline dispensers."  *Id*. at 930. The safe harbor defense barred the plaintiffs' claim because "[t]he allegedly unfair

1   business practice in this case is the residual fuel resulting from a DMS-certified

2   dispenser design [, and] California law unequivocally permits Defendants'

3   conduct, therefore affording safe harbor from UCL liability." *Id*. at 933.

4        Similarly in *Rubio v. Capital One Bank, (USA) N.A.*, 572 F. Supp. 2d 1157

5   (C.D. Cal. 2008), Plaintiff received a credit card solicitation characterizing the

6   APR as "[a] fixed rate of 6.99% (0.01915% daily periodic rate)" in a Schumer

7   Box. *Id.*, at 1160 . The Truth in Lending Act and its regulations "require that the

8   APR be disclosed inside the Schumer Box." *Id*., at 1164. "By indicating, in the

9   Schumer Box, that the offer was for '[a] fixed rate of 6.99%,' Defendant's

10  disclosure of the APR ostensibly complied with this requirement." *Id*. The "safe

11  harbor" defense applied to a credit card solicitation and barred the UCL cause of

12  action.

13       The courts in *Alvarez* and *Rubio* were faced with a situation where the

14  plaintiffs were attempting to use the UCL to prohibit conduct that which was

15  expressly allowed under statute or regulation. FG must demonstrate the

16  regulations "clearly permit the conduct," *Davis*, at 1164, but is incapable of doing

17  so because it failed to cite to a single regulation authorizing the use of

18  "Homemade" on its label. *Cel-Tech*, at 183. Nothing in section 5.34 or section

19  5.42 requires or permits FG to label their product as "Homemade." Likewise, the

20  regulations do not authorize FG to label their product as "Homemade" if certain

21  criteria are ostensibly met.

22       FG instead argues that any action taken by federal agents pursuant to federal

23  regulation is enough to apply the "safe harbor" defense. Again, this is a radical

24  expansion of the defense. The "safe harbor" defense, however, is founded on

25  statutes and regulations.[3] *Davis*, at 1166. It does not apply to federal action which

_____

[3]       It is notable that two California appellate courts held that the "safe harbor"
provision only applies to statutes and not regulations. *Krumme v. Mercury
Insurance Co.*, 123 Cal.App.4th 924, 946 (2004) ["administrative regulations are
insufficient to create a safe harbor from UCL liability."] and *Aron v. U-Haul Co. of
California*, 143 Cal.App.4th 796, 804 (2006) ["The power to create and define an
exception to the UCL is committed to the Legislature."]. The Ninth Circuit
disagreed with this California law and held regulations could be a source of a "safe

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT
14-cv-2569-JM-JLB

does not rise to the level of federal law, much in the same way as preemption. *Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1076 (E.D. Cal. 2010) [A FDA policy "cannot be accorded the weight of federal law for purposes of the safe harbor rule…."].

FG fails to direct the Court to any authority supporting its position that the issuance of a COLA rises to the level of federal law as to justify the application of the "safe harbor" defense. Federal preemption of state law does not occur "every time someone acting on behalf of an agency makes a statement or takes an action within the agency's jurisdiction." *Fellner v. Tri-Union Seafoods, L.L.C.*, 539 F.3d 237, 245 (3rd Cir. 2008).

In addition, it would contravene public policy to immunize an alcohol manufacturer from consumer fraud suits because the labels of its products had been approved by the TTB. Unlike, for example, FDA's "rigorous" pre-approval process for drugs, *Whitaker v. Thompson*, 248 F. Supp. 1, 3 (D.D.C. 2002), TTB's approval of alcohol labels is hinges on self-reporting. As the labels submitted by FG demonstrate, TTB bases its approval of liquor labels on the affirmation of applicants that "the representations on the labels attached to the [applications for and certification/exception of label/bottle approval] . . . truly and correctly represent the content of the containers to which these labels will be applied." Def.'s Mem., Ex. 1 at 2, 5, 8, 11, 15, 18, 22, 25, 28, 31, 33, 35, 38, 40, 47, 52; *see also* http://www.ttb.gov/forms/f510031.pdf (a blank application for certification/exemption of label/bottle approval). In other words, TTB's approval of FG's labeling of Tito's as "Handmade" demonstrates nothing more than that FG repeatedly affirmed to TTB that its vodka is truly handmade. It does not suggest that had TTB known the process by which Tito's was actually made, it would have concluded that FG's label complied with federal law.[4]

---

harbor." *Davis*, at 1166.

[4]     FG suggests that TTB's approval of its label was based not simply on FG's representations to TTB, but also on an "in person review" conducted by TTB agents. Def.'s Mem. at 8. This is a factual assertion from outside the four-corners

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT
14-cv-2569-JM-JLB

California's safe harbor protects companies from consumer fraud suits resulting from attempts to comply with other state and federal law. It does not protect companies who receive the blessing of regulators by misrepresenting the veracity of their products' labels. Accordingly, California's safe harbor does not immunize FG's deceptive labeling.

## III.   Plaintiff Has Stated Claims Under the UCL, CLRA, and FAL.

Plaintiff brings three causes of action pursuant to three California consumer protection statutes: the UCL, the CLRA, and the FAL. FG argues that Plaintiff has failed to state a claim under any of these provisions.  According to FG, this is because: (A) the *Forbes* article upon which Plaintiff relies renders the reliance claim implausible; (B) Plaintiff has failed to plausibly state that the "Handmade" language on the label would deceive a reasonable consumer; (C) Plaintiff lacks privity with FG; (D) Plaintiff has failed to state an injury in fact; and (E) Plaintiff failed to satisfy the particularity requirements under Rule 9(b). These arguments are all frivolous.

### A.     Plaintiff May Rely Upon the *Forbes* Article in His Complaint.

FG argues that Plaintiff's reliance on an 2013 *Forbes* article renders the FAC "classic *Iqbal* fodder," because Plaintiff, who "himself knows nothing," seeks "to get the facts [through discovery] he admittedly lacks." Def.'s Mem. at 16. According to FG, because the *Forbes* article is "hearsay," "the only thing the Court should assume is 'true' from this Complaint is that the statements appeared in the article, and not the underlying facts (which are not known to Plaintiff) are true." *Id*. at 5 n.3.

At the pleading stage, however, a plaintiff need not put forth evidence proving his claim. Rather, he need only "allege 'enough fact to raise a reasonable

---

of the Complaint that FG is precluded from making at this stage. Plaintiff actually challenges the veracity of this statement, but regardless, even if this Court were to assume the truth of FG's assertion (it should not), California's safe harbor would still be inapplicable for the reasons set forth above.

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT
14-cv-2569-JM-JLB

1   expectation that discovery will reveal' the evidence he seeks." *Dichter-Mad*

2   *Family Partners, LLP v. United States*, 709 F.3d 749, 751 (9th Cir. 2013); *see also*

3   *Gager v. United States,* 149 F.3d 918, 922 (9th Cir. 1998) [explaining that a

4   complaint must "put forth sufficient facts to show that the evidence sought

5   exists."]. There is nothing wrong with a plaintiff's alleging facts in order to get

6   discovery "he admittedly lacks," Def.'s Mem. at 16, as long as the allegations in

7   the complaint suggest that such discovery exists. Indeed, this is the very purpose of

8   the discovery process contemplated by the Federal Rules. *Accord Fair Wind*

9   *Sailing, Inc. v. Dempster*, 764 F.3d 303, 312 (3d Cir. 2014) ["At the pleadings

10  stage, it is often not possible for a plaintiff to recount with specificity to what

11  extent a defendant was enriched by her misconduct. That is what discovery is for."]

12      FG's suggestion that Plaintiff should not be permitted to rely on the *Forbes*

13  article because it is hearsay confuses the standard for evaluating evidence and the

14  standard for evaluating allegations in a complaint at this stage. A plaintiff may

15  make allegations based upon investigative reporting, for example, so long as the

16  allegations stemming from that article, when construed in the light most favorable

17  to the plaintiff, "raise a reasonable expectation" that the discovery will prove the

18  article correct. *See Dichter-Mad Family Partners*, 709 F.3d at 751. Indeed, this is

19  so even where—as in the securities fraud context—a plaintiff's fraud allegations

20  are subject to a particularly high pleading standard. *See In re McKesson HBOC,*

21  *Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1272 (N.D. Cal. 2000) ["Some defendants

22  appear to argue that the newspaper articles should be discounted because they are

23  hearsay. This objection is not well-taken, because all pleadings on information and

24  belief are hearsay. Even under the [Private Securities Litigation] Reform Act,

25  plaintiffs are only required to plead facts, not to produce admissible evidence."].

26  Tellingly, FG has not pointed to a single case suggesting that allegations based

27  upon an investigative report in a major news publication are "conclusory" in

28

nature.[5]

FG also claims that the *Forbes* article merits no weight because it is based upon "erroneous conclusions formed by a reporter who seemed not to know all the facts." Def.'s Mem. at 5 n.3. But again, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party." *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1997); *Iqbal*, 556 U.S. at 666. FG's suggestion that the article is "erroneous" should be ignored. The *Forbes* article was published in a prestigious publication and based upon first hand investigative reporting. Allegations based upon that article should therefore be assumed true at this stage of the litigation.

In sum, the filing was predicated on a common sense belief that there was no way for FG to be truly "handmade" given the sheer volume of its sales and it was only *after* Plaintiff retained Class Counsel that the *Forbes* article was discovered. Plaintiff did not err in alleging facts based upon the *Forbes* article. Neither the fact that it is "hearsay," nor FG's contention that it is "erroneous," are relevant at this stage of the litigation as the article lends credence and support to Plaintiff's pre-filing theories relating to the falsity of the "Handmade" claims.

**B.    The FAC Plausibly Alleges that "Handmade" Would Deceive a Reasonable Consumer.**

FG next argues that Plaintiff has failed to adequately allege that the "Handmade" language on the Tito's label would deceive a reasonable consumer. This simply is not so.  "California's UCL, FAL and CLRA rely on the same

---

[5]    It is irrelevant that allegations based upon an article are made "upon information and belief." There is no requirement that the allegations in the complaint be based upon Plaintiff's personal knowledge, rather than on information and belief. *See Sanchez v. Aviva Life & Annuity Co.*, No. CIV.S09-1454 FCD/DAD, 2010 WL 2606670, at *4 (E.D. Cal. June 28, 2010) [rejecting the argument "that factual allegations plead on information and belief are not entitled to the same presumption of truth as allegations plead in other ways when Rule 8(a) is the applicable pleading standard"]; *see also* FRCP, Rule 11(b) [plaintiffs may plead the allegations in complaints upon not only "personal knowledge," but also upon "information, and belief"].

objective test, that is, whether members of the public are likely to be deceived." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012). "[T]hese laws prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

"California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." *Williams*, 552 F.3d at 938. This is so because whether an advertisement is deceptive often turns not only on the language of the advertisement itself, but also on extrinsic evidence, such as consumer surveys. *Id.* at 938-39 [explaining that determining "[w]hether a practice is deceptive, fraudulent, or unfair" generally "requires consideration and weighing of evidence from both sides"] (quoting *Linear Technology Corp. v. Applied Materials, Inc.,* 152 Cal.App.4th 115, 61 Cal. Rptr. 3d 221, 236 (2007)); *see also Jou v. Kimberly-Clark Corp.*, No. C-13-03075 JSC, 2013 WL 6491158, at *7 (N.D. Cal. Dec. 10, 2013) [explaining that the "meaning a reasonable consumer would ascribe" to a term is "not a question that can be resolved on a Rule 12(b)(6) motion"]. As the Ninth Circuit noted in *Williams*, motions to dismiss deceptive business practice claims should be granted only in "rare" situations, when the advertisement at issue is patently puffery, or where the allegations of deception are otherwise implausible. 552 F.3d at 939.[6]

In this case, Plaintiff properly alleges that a reasonable consumer would

---

[6]   The *Williams* Court pointed to *Freeman v. Time, Inc.,* 68 F.3d 285 (9th Cir. 1995) as an example of the "rare" situation where it was appropriate to dismiss a consumer fraud case for failure to allege a plausible deception to a reasonable consumer. *Williams*, 552 F.3d at 939. There, a plaintiff alleged that mailers he had received fraudulently suggested that he had won a million dollar sweepstakes. But the mailer explicitly stated multiple times that the plaintiff would win the prize only if he had the winning number. "Thus, it was not necessary to evaluate additional evidence regarding whether the advertising was deceptive, since the advertisement itself made it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Id.* (citing *Freeman*, 68 F.3d at 285).

13

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT
14-cv-2569-JM-JLB

construe the term "Handmade" on the Tito's label to mean that the product was made by hand, rather than by automated machinery. In fact, Tito's is distilled in technically advanced machinery and is made from a mass produced neutral spirit. Accordingly, construing the FAC in the light most favorable to Plaintiff, the Tito's label is both false and misleading to any reasonable consumer.

### 1. "Handmade" Is Not Non-Actionable Puffery.

FG actually does not contend that "Handmade" constitutes non-actionable puffery but Plaintiff is compelled to discuss why FG presumably did not make such an argument.  Puffery takes two forms: "(1) an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying; or (2) a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion." *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 497 (5th Cir. 2000). By contrast, "misdescriptions of specific or absolute characteristics of a product are actionable." *Cook, Perkiss and Liehe v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir. 1990); *Cornerstone Propane Partners, L.P. Sec. Litig.,* 355 F. Supp. 2d 1069, 1087–88 (C.D. Cal. 2005) [a statement is puffery where it is "not capable of objective verification"]. Unlike other "puffery" cases, the term "Handmade" is not an "exaggerated, blustering" statement that could not reasonably be construed to have specific meaning. *Cf. Anunziato v. eMacchines, Inc.*, 402 F. Supp. 2d 1133, 1140 (C.D. Cal. 2005) [holding that the term "reliability" is puffery because it is "inherently vague and general"]. Nor is it a generalized claim of superiority. *Cf. Oestreicher v. Alienware Corp.,* 544 F.Supp.2d 964, 973 (N.D. Cal . 2008) [explaining that "'higher performance,' 'longer battery life,' 'richer multimedia experience,' 'faster access to data' are all non-actionable puffery."]. Rather, this is a specific claim about the method by which the product at issue is made: a "Handmade" product is made by hand, rather than by machine. Therefore, term "Handmade" does not constitute non-actionable puffery. *Accord Louis*

*Altman and Malla Pollack, Callman on Unfair Competition, Trademarks and Monopolies,* § 5:42 (4th ed.) ["If the desirability of a product depends on the process by which it is manufactured, any false or misleading statement concerning that process inevitably involves a misleading representation with respect to quality."].

### 2.    A Reasonable Consumer Could Plausibly Believe that Vodka Was "Handmade."

FG nonetheless argues that Plaintiff has failed to allege a material misrepresentation under the California consumer fraud statutes, because no reasonable consumer could plausibly believe that "the entire process [of making vodka] cannot be done by hand." Def.'s Mem. at 15. This is so, says FG, because the distilling of vodka necessarily "has to be done by some sort of machine." *Id*.

For several reasons, this argument misses the mark. First, FG's assertion that vodka "cannot be done by hand" is based on facts from outside the FAC and the purview of expert testimony that is not germane at this stage of litigation.  FG's claim must accordingly be rejected at this stage of the litigation.

Second, the assertion also happens to be false. While it may be that vodka cannot be made without certain primitive tools, vodka can be—and often is—made without complex, automated machinery.  Discovery will demonstrate that a reasonable consumer would consider vodka made with certain basic tools, but without automated machinery, to be handmade. *See* Merriam-Webster, "Handmade" available at http://www.merriam-webster.com/dictionary/handmade (defining "Handmade" as "made by hand or *by a hand process*" (emphasis added)). Despite FG's protestations to the contrary, the fact that vodka must be "***heat[ed]***" over a flame and **"*distill[ed]*"** in a pot does not in any way suggest that vodka cannot be "Handmade," as the term is understood by a reasonable consumer. Def.'s Mem. at 15.

In any event, FG's argument that no vodka can be "Handmade" amounts to

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

an attempt to litigate, at the motion to dismiss stage, what "Handmade" would mean to the reasonable consumer. At this stage of the litigation, the Court should not choose between competing definitions of the allegedly deceptive term.

Indeed, FG's argument is similar to the argument unsuccessfully made by the defendant in *Jou*. There, a plaintiff alleged that the defendant's labeling of its diapers as "pure & natural" was deceptive and misleading, because it led reasonable consumers to believe that the diapers were free from non-natural ingredients. 2013 WL 6491158, at *6. The defendant countered that a reasonable consumer would construe "pure & natural" to mean the product contained some natural ingredients, and not that the product contained all natural ingredients. *Id.* at *7. Rejecting the defendant's argument, the court explained that, at the motion to dismiss stage, it was not permitted to decide between the competing meanings of the slogan:

> The issue is not whether the unmodified use of "pure & natural" is devoid of meaning; it is *which* meaning a reasonable consumer would ascribe to it. Whether a reasonable consumer would agree with Plaintiffs ("natural" means no non-natural ingredients) or with Defendant ("natural" means at least one natural ingredient among other, possibly non-natural ingredients) or with neither is not a question that can be resolved on a Rule 12(b)(6) motion.

*Id.* at *7; *accord Chacanaca v. Quaker Oats Co.,* 752 F. Supp. 2d 1111, 1125 (N.D. Cal. 2010) [declining to hold at the motion to dismiss stage that the term "wholesome" was too vague to mislead a reasonable consumer, despite the fact that the term might reasonable construed to have several different meanings]. So too here, this Court should reject FG's attempt to impose its own definition of "Handmade." How a reasonable consumer would construe the term "Handmade" cannot be resolved without discovery and/or expert testimony. *See Williams*, 552 F.3d at 938.

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT
14-cv-2569-JM-JLB

Finally, assuming, *arguendo*, that there is no such thing as "Handmade" vodka[7], this would not defeat Plaintiff's claim because an advertisement may mislead a reasonable consumer even if those with specialized knowledge would see through the advertisement's claims. *See Louis Altman and Malla Pollack, Callman on Unfair Competition, Trademarks and Monopolies,* §  5:17 (4th ed.) [explaining that "[t]he purchaser is not duty bound to suspect or discredit the advertiser's claims"]. FG has not—and at this stage cannot—show that the reasonable vodka consumer would have reason to know its vodka could not actually be "Handmade," irrespective of how other vodkas are made.

### 3.   Other Portions of the Label Do Not Preclude the Reasonable Consumer from Believing Tito's Is "Handmade."

In addition to arguing that Plaintiff's claim should fail because vodka cannot be "Handmade," FG asserts that language on the Tito's bottle—including small print on the back label—"discloses precisely what FG means by the term 'Handmade' with respect to the process of making Tito's Handmade Vodka. It means 'crafted in an Old Fashioned Pot Still.'" Def.'s Mem. at 15. Plaintiff disagrees.

First, while is true that the Tito's label also states (falsely) that Tito's is "crafted in an Old Fashioned Pot Still," FG fails to explain why a reasonable consumer would assume that this statement narrowed Tito's assertion that it was "Handmade." Nothing on the front or back label suggests that one claim modifies the other.

Second, this Court should reject FG's suggestion that small print on the back of the Tito's bottle somehow modifies its use of the term "Handmade," which appears not only in large font on the front label, but also in the name of the product

---

[7]    Plaintiff actually disagrees with FG's contention that there is no such thing as "Handmade" vodka because there most certainly is "bathtub gin" and other alcohols (including homebrewed beer) that is made sans automation.

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT
14-cv-2569-JM-JLB

1   itself. Indeed, in *Williams*, the Ninth Circuit rejected a similar attempt to use small

2   print on a package's periphery to immunize deceptive content on the front of the

3   package. *Williams*, 552 F.3d at 939 [holding that a defendant's use of the word

4   "Fruit Juice" on fruit snack packaging could suggest to a reasonable consumer that

5   the product contained fruit juice, despite the fact that the side of the package

6   contained a list of the products' ingredients, on the grounds that a "reasonable

7   consumers should [not] be expected to look beyond misleading representations on

8   the front of the box to discover the truth from the ingredient list in small print on

9   the side of the box"].[8]

10      Finally, even if a reasonable consumer would assume that "Handmade"

11  simply means "crafted in an old fashioned pot still," this does not save FG because

12  Plaintiff specifically alleges that Defendant's claims that Tito's is crafted in an

13  "old fashioned" pot stills is, at the very least, misleading.  According to the FAC,

14  Tito's is "distilled in a large industrial complex with modern, technologically

15  advanced stills." FAC at ¶ 1. FG's claim to the contrary is irrelevant. *Chacanaca*,

16  752 F. Supp. 2d at 1125 [at the motion to dismiss stage, rejecting defendant's

17  contention that an allegedly deceptive statement is "true" and therefore non-

18  actionable].

19      **C.   Plaintiff's Lack of Privity with FG Is Irrelevant.**

20      FG next argues that Plaintiff's consumer fraud claims fail because Plaintiff

21  alleges that he bought Tito's from a liquor store, rather than through FG itself.

22  Def.'s Mem. at 19. But FG fails to cite any case law suggesting that a consumer

23  cannot state a claim under the California consumer fraud statutes where he

24  purchases the defendant's product through an intermediary such as a well-known

25

26  [8]   In fact, in *Gerber*, the defendant had a stronger argument that other language
    on the packaging undermined any deceptive advertising claim than FG does here.
27  There, unlike here, the language on the side of the packaging specifically
    contradicted the allegedly misleading representation of the front of the packaging.
    *Id.* Again, the language on the back of the Tito's label does not contradict the
28  representation on the front of the Tito's label that the product is "Handmade."

retailer.  In fact, it is well established that neither UCL nor CLRA claims require privity between the consumer and manufacturer. *See Clayworth v. Pfizer, Inc.,* 49 Cal.4th 758, 788 (2010) [noting that "indirect purchases may support UCL standing"]; *Herron v. Best Buy Stores, LP*, No. 12-CV-02103-GEB-JFM, 2013 WL 4432019, at *3-4 (E.D. Cal. Aug. 16, 2013) [holding that a consumer need not be in privity with a manufacturer in order to state a claim under the CLRA. Thus, the fact that Plaintiff purchased Tito's through an intermediary retail store, rather than through FG directly, is irrelevant.

### D.    Plaintiff Has Adequately Alleged an Injury.

FG next contends that "Plaintiff has not alleged any actual injury in fact, in the form of an actual loss of money or property, or other damages cause by the 'Handmade' label." Def.'s Mem. at 19. This is simply untrue. Plaintiff properly alleges that he and other Class Members: (1) paid a premium price for Tito's based on the claim that it was "Handmade," and (2) would not have purchased Tito's had they known it was "Handmade." *See, e.g.*, FAC at ¶ 18; *id.* at ¶ 14. Both constitute cognizable injuries under the California consumer fraud statutes. *See Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. C 10-01044 JSW, 2011 WL 159380, at *2 (N.D. Cal. Jan. 10, 2011), aff'd, 475 F. App'x 113 (9th Cir. 2012) ["Accepting as true the allegations that Defendant charged a premium price based on alleged misrepresentations, Plaintiff satisfies the injury in fact requirement for standing to pursue claims related to Defendant's Drumstick products under the UCL, FAL and CLRA."]; *Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310, 330, 246 P.3d 877 (Cal. 2011) ["A consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of [the UCL and FAL] by alleging, as plaintiffs have here, that he or she would not have bought the product but for the misrepresentation. That assertion is sufficient to allege causation—the purchase would not have been made but for the misrepresentation. It is also sufficient to allege economic injury."]; *Hinojos v.*

19

1  *Kohl's Corp.*, 718 F.3d 1098, 1107-08 (9th Cir. 2013) [extending *Kwikset* to claims

2  brought under the CLRA].  Accordingly, it is undeniable that Plaintiff alleged an

3  economic injury under the UCL, CLRA, and FAL, and has standing to pursue

4  claims under all three statutes.

5         **E.**    **The FAC satisfies Rule 9(b).**

6        Finally, FG argues that Plaintiff's consumer fraud claims fail because

7  Plaintiffs allegations do not satisfy Rule 9(b)'s heightened pleading requirements.

8  Def.'s Mem. at 22. A close look at the FAC itself shows otherwise.[9]

9        Claims sounding in fraud must state "with particularity the circumstances

10  constituting fraud." Fed. R. Civ. P. 9(b). "To satisfy Rule 9(b), a pleading must

11  identify the who, what, when, where, and how of the misconduct charged, as well

12  as what is false or misleading about the purportedly fraudulent statement, and why

13  it is false." *Cafasso, United States ex rel v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d

14  1047, 1055 (9th Cir. 2011). "[A] pleading is sufficient if it identifies the

15  circumstances constituting the fraud so that the defendant can prepare an adequate

16  defense." *Steiner v. Hale*, 868 F. Supp. 284, 286 (S.D. Cal. 1994); *First Advantage*

17  *Background Servs. Corp. v. Private Eyes, Inc.*, 569 F. Supp. 2d 929, 942 (N.D.

18  Cal. 2008).

19        The FAC contains detailed allegations sufficient to allow FG to prepare an

20  adequate defense regarding its fraudulent conduct. Specifically, the FAC alleges

21  the "who" (FG), FAC at ¶¶ 9-10; the "what" (labeling Tito's "Handmade" when in

22  fact it is not), FAC at ¶¶ 9-11; the "how" (misleading consumers, including

23  Plaintiff, into purchasing a product they believe to be "Handmade" when it is not),

24  FAC at ¶ 12-14, 16-18; the "where" (on the labels of Tito's, distributed in a

25

26  [9]    It is unclear whether FG also means to argue that Plaintiff's negligent
   misrepresentation claim is subject to Rule 9(b). It is well established, however, that
27  a negligent misrepresentation claim does not sound in fraud, and need not satisfy
   Rule 9(b). *See Petersen v. Allstate Idem. Co.*, 281 F.R.D. 413, 416-418 (C.D. Cal.
28  2012) [explaining that "Rule 9(b) does not apply to negligent misrepresentation
   claims"].

1   BevMo! Store in San Diego and throughout the United States), FAC at ¶¶ 10, 15,

2   and the "when" (in August 2014, and during the class period), FAC at ¶¶ 14, 10.

3   These allegations are more than sufficient to meet Rule 9(b)'s pleading

4   requirements.  *See, e.g.*, *Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387

5   PJH, 2011 WL 2111796, at *6 (N.D. Cal. May 26, 2011) [holding in a comparable

6   food labeling case that a complaint satisfied Rule 9(b) where it alleged (1)

7   the "who" was defendants (2) the "what" was the deceptive statement that product

8   was "all natural" (3) the "when" as "since at least 2006," and "throughout the class

9   period;" (4) the "where" was on the product labels; (5) and the "how" was by

10  making the misleading statement at issue]; *Chacanaca,* 752 F. Supp. 2d at

11  1126 [finding Rule 9(b) satisfied when "plaintiffs have identified the particular

12  statements they allege are misleading, the basis for that contention, where those

13  statements appear on the product packaging, and the relevant time period in which

14  the statements were used"].

15      Despite the fact that Plaintiff specifically alleged that he purchased Tito's in

16  August 2014, FG suggests that Plaintiff has failed to adequately allege "when" the

17  Tito's was purchased, because "we do not know how often Plaintiff bought Tito's

18  Handmade Vodka." Def.'s Mem. at 22. But Rule 9(b) does not require a plaintiff

19  alleging consumer fraud to enumerate each instance in which he purchased the

20  product at issue. FG's unsupported claim to the contrary is frivolous. Indeed, by

21  pleading the specific month in which he last purchased the product, Plaintiff has

22  done more than is required under Rule 9(b). *Cf. Werdebaugh v. Blue Diamond

23  Growers*, No. 12-CV-02724-LHK, 2013 WL 5487236, at *14 (N.D. Cal. Oct. 2,

24  2013) [holding that the plaintiff satisfied Rule 9(b)'s "when" requirement where he

25  pleaded that he purchased the relevant product during the class period].

26      Equally groundless and unsupported by precedent is FG's argument that the

27  FAC fails to satisfy Rule 9(b) because "[w]e do not know when Plaintiff first

28  encountered Tito's Handmade Vodka, or under what circumstances." Def.'s Mem.

1  at 22. Again, Plaintiff is not required—under either Rule 8(a) or Rule 9(b)—to

2  plead this level of detail.[10]

3  **IV.    Plaintiff Has Alleged a Claim for Negligent Misrepresentation.**

4         "The elements of negligent misrepresentation include: (1) misrepresentation

5  of a past or existing material fact, (2) without reasonable ground for believing it to

6  be true, (3) with intent to induce another's reliance on the misrepresentation, (4)

7  ignorance of the truth and justifiable reliance on the misrepresentation by the party

8  to whom it was directed, and (5) resulting damage." *Glenn K. Jackson Inc. v. Roe*,

9  273 F.3d 1192, 1201 (9th Cir. 2001).  Plaintiff has alleged that: (1) FG

10 misrepresented that Tito's was "Handmade," FAC at ¶¶ 71-72; (2) it did so without

11 reasonable grounds for believing it to be true, FAC at ¶ 73; (3) it intended to

12 induce Plaintiff to purchase Tito's, FAC at ¶ 74; (4) Plaintiff was ignorant that

13 Tito's was not in fact "Handmade" and justifiably relied on the misrepresentation

14 on the Tito's label, FAC at ¶¶ 75-77; and (5) Plaintiff suffered an injury as a result

15 of FG's conduct, FAC at ¶ 78. Thus, Plaintiff has stated a claim for negligent

16 misrepresentation.

17        Nonetheless, FG insists that Plaintiff's negligent misrepresentation claim

18 should be dismissed because he has failed to plausibly plead justifiable reliance.

19 Under California law, "reasonableness of reliance on a misrepresentation is

20 ordinarily a question of fact. Whether reliance was justified in a particular

21 circumstance may only be decided as a matter of law if reasonable minds can come

22 to only one conclusion based on the facts." *Anschutz Corp. v. Merrill Lynch & Co.*

---

[10]      Plaintiff takes issue with FG's assertion (with zero legal authority) that a
consumer who tasted Tito's before seeing the label could not plausibly have relied
on the deceptive language in the label when making a subsequent purchase,
because that consumer "had already decided he liked Tito's". Def.'s Mem. at 2.
Under this theory, no consumer could bring a false labeling suit for a second
purchase of the same product. This is not the law (nor should it be). A consumer
may purchase a product *both* because he likes its taste *and* because of its deceptive
labeling. As to FG's contention that class members who tasted Tito's before
purchasing it are "differently situated" than consumers who relied on the labeling
before ever tasting the product, Def.'s Mem. at 22, this is an argument (albeit a
dubious one) better addressed at the class certification stage.

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT
14-cv-2569-JM-JLB

1    *Inc.*, 785 F. Supp. 2d 799, 827 (N.D. Cal. 2011).

2         According to FG, Plaintiff's allegation that he justifiably relied on FG's

3    representation that Tito's was "Handmade" "cannot be squared with Plaintiff's

4    reliance on the *Forbes* article. Taking Plaintiff's allegations at face value, as a

5    simple matter of logic, no one who purchased Tito's Handmade Vodka after the

6    article ran in June 2013 could reasonably have relied on Tito's 'Handmade' claim,

7    because they knew or should have known the 'truth'…" Def.'s Mem. at 21.

8         Plaintiff, however, does <u>not</u> allege that he viewed the *Forbes* article before

9    purchasing Tito's, or that he has purchased Tito's since becoming aware of the

10   article's contents. In fact, discovery will reveal that he didn't, and he hasn't. But

11   FG seems to argue this is beside the point; rather, it suggests that, as a matter of

12   law, it is unreasonable for a consumer to rely on a representation on a label after a

13   single article published in one news outlet exposes that label to be deceptive (even

14   if the consumer never read the article).

15        This is nonsense. Common sense dictates that the publication of an article in

16   *Forbes* does render implausible Plaintiff's allegation that he justifiably relied on

17   representations on the Tito's label *before* ever reading or being aware of the

18   existence of the article. California law does not require a reasonable consumer to

19   scour each and every issue of *Forbes* (and presumably every other magazine and

20   newspaper in existence) before deciding whether to rely on the representations on

21   the packaging of food or drink items.  FG again fails to cite to a single case in

22   support of its argument to the contrary. Therefore, the publication of the *Forbes*

23   article does not, in and of itself, indicate that it was unreasonable for Plaintiff to

24   rely on FG's representation that Tito's was "Handmade."

25        FG also argues that Plaintiff failed to allege that the Tito's label contains an

26   actionable misrepresentation, or that Plaintiff suffered a cognizable injury under

27   California law. Def.'s Mem. at 21. For the reasons set forth in section III.B of this

28   brief, these arguments lack merit.

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

1    In sum, Plaintiff properly states a claim for negligent misrepresentation.

2   **V.    FG's Attempt to Defeat a Nationwide Class Is Premature.**

3    FG argues that "Plaintiff alleges no facts to justify application of California

4   consumer protection statutes to purchases made elsewhere." Def.'s Mem. 2.

5   Relying on *Mazza v. American Honda Motor Co, Inc.*, 666 F.3d 581 (9th Cir.

6   2012), FG intimates that *Mazza* places the burden on the plaintiff at the motion to

7   dismiss stage to demonstrate that he may represent a nationwide class. *Mazza*

8   stands for no such proposition.

9    In *Mazza*, the Ninth Circuit reversed the district court's certification of a

10  nationwide class after concluding that, "[u]nder the facts and circumstances of

11  th[at] case," California's choice-of-law rules dictated that "each class member's

12  consumer protection claim should be governed by the consumer protection laws of

13  the jurisdiction in which the transaction took place." *Id.* at 594. However, *Mazza*

14  does not stand for the proposition that a plaintiff may not bring a nationwide class

15  under California law, or that it is the plaintiff must demonstrate *at the pleading*

16  *stage* that all consumers are similarly situated. Quite the contrary, *Mazza*, a class

17  certification opinion, reaffirmed that the class-wide choice-of-law analysis should

18  take place at the class certification stage, and that it should be based upon whether,

19  in the particular case in question, there were material differences between state

20  laws. Thus, courts in the Ninth Circuit "have denied motions to dismiss nationwide

21  class claims based on California consumer protection statutes based on the need to

22  conduct a case-specific choice of law analysis." *Czuchaj v. Conair Corp.*, No. 13-

23  CV-1901-BEN RBB, 2014 WL 1664235, at *9 (S.D. Cal. Apr. 18, 2014) ["It may

24  well be that Plaintiffs will not be able to certify a nationwide class. . . . However,

25  the limited holding and the analysis conducted by the Ninth Circuit indicate that

26  this Court must conduct a thorough choice of law analysis before determining if

27  the same conclusion is warranted in the instant case."]; *Werdebaugh*, 2013 WL

28  5487236, at *16 ("[T]he Court finds that striking the nationwide class allegations

1    at [the motion to dismiss] stage of this case would be premature."); *Forcellati v.*

2    *Hyland's, Inc.,* 876 F. Supp. 2d 1155, 1159 (C.D. Cal. 2012) ["Importantly,

3    *Mazza*…undertook a class-wide choice-of-law analysis at the class certification

4    stage, rather than the pleading stage at which we find ourselves. Until the Parties

5    have explored the facts in this case, it would be premature to speculate about

6    whether the differences in various states' consumer protection laws are material in

7    this case."]. Thus, FG's attempt to defeat the nationwide class is premature.

8                        <u>**ALTERNATIVE LEAVE TO AMEND**</u>

9            Alternatively, should this Court find persuasive any of FG's arguments,

10   Plaintiff respectfully requests leave to amend the FAC to cure any such perceived

11   deficiencies.  As this Court is well aware, leave to amend should be "freely given"

12   when the plaintiff could cure the pleading defects and present viable claims. Fed.

13   R. Civ. P. 15 (a); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

14                               <u>**CONCLUSION**</u>

15           In sum, this Court should deny FG's motion to dismiss. Alternatively,

16   Plaintiff respectfully requests that this Court grant leave to amend the FAC to cure

17   any deficiencies otherwise warranting dismissal.

18   Dated:  January 26, 2015                    Respectfully Submitted,

19                                               DEL MAR LAW GROUP, LLP

20

21                                               By:/sJohn H. Donboli
                                                 JOHN H. DONBOLI
22                                               jdonboli@delmarlawgroup.com
                                                 JL SEAN SLATTERY
23                                               sslattery@delmarlawgroup.com
                                                 Attorneys for Plaintiff:  GARY
24                                               HOFMANN and all others similarly
                                                 situated

25

26

27

28

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT
14-cv-2569-JM-JLB