GREENBERG TRAURIG, LLP
Ricky L. Shackelford (SBN 151262)
*shackelfordr@gtlaw.com*
Matthew R. Gershman (SBN 253031)
*gershmanm@gtlaw.com*
1840 Century Park East, Suite 1900
Los Angeles, CA  90067
Tel:  (310) 586-7700
Fax:  (310) 586-7800

COOLEY LLP
Michelle C. Doolin (SBN 179445)
*mdoolin@cooley.com*
Darcie A. Tilly (SBN 239715)
*dtilly@cooley.com*
4401 Eastgate Mall
San Diego, CA 92121
Tel: (858) 550-6000
Fax: (858) 550-6420

Attorneys for Defendant,
Fifth Generation, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY HOFMANN,<br><br>                  Plaintiff,<br><br>v.<br><br>FIFTH GENERATION, INC., a Texas corporation; and DOES 1 through 100, inclusive,<br><br>                  Defendants. | CASE NO.:   14-CV-2569 JM (JLB)<br><br>**DEFENDANT FIFTH GENERATION, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>Hearing Date: February 9, 2015<br>Hearing Time: 10:00 a.m.<br><br>Action filed:  Sept. 30, 2014<br>Removed:      October 28, 2014 |

## I.     INTRODUCTION

Defendant's Motion to Dismiss Plaintiff's Amended Complaint was premised on two basic propositions.  First, Plaintiff's claims about the label on Tito's Handmade Vodka are contrived; they take self-selected words out of context, load them up with invented meanings, and speculate that "reasonable consumers" would do the same. Second, the requirement that alcoholic product labels must be given express approval by the Alcohol and Tobacco Tax and Trade Bureau ("TTB")—the federal agency charged by Congress to ensure that no false or misleading label is used—precludes Plaintiff's claims.  TTB approval was required before Fifth Generation could put the label on a single bottle of vodka, and Fifth Generation cannot make material changes to the label without going back to the TTB.  Plaintiff claims that he is nevertheless entitled to second guess to the TTB's decision through the guise of this action—contrary to the "safe harbor" created to prevent defendants who must comply with other positive laws from finding themselves being sued for doing so.

Plaintiff dismisses the TTB's decision as simply passive and repeatedly invokes the deferential review standard for getting and keeping his foot in the courthouse door. And he goes to great lengths to mischaracterize Fifth Generation's arguments and misconstrue controlling authority.  These efforts are ultimately unavailing because they do not overcome the deficiencies in the Amended Complaint.  In determining whether Plaintiff's claim is plausible, the Court must look at what the label actually says (rather than Plaintiff's distortions) against the backdrop of the legally mandated pre-approval the label already received.  When Plaintiff's allegations are examined according to those standards, his claims are implausible, and his Amended Complaint should be dismissed.

## II.    ARGUMENT

### A.     Plaintiff's Fanciful Reinterpretation Of The Tito's Handmade Vodka Label Is Inaccurate.

For all his attacks on reference to documents and information outside the pleading, Plaintiff understands that the words on the actual label can and must be considered by the

1

Court in deciding the Motion to Dismiss.  As Fifth Generation has demonstrated, the label when read in full context—as it must be—is not misleading.

Plaintiff advances three basic points about the Tito's Handmade Vodka label, which he theorizes that "reasonable consumers" would believe.  First, he asserts that "a reasonable consumer would believe that vodka purporting to be "Handmade" was produced from scratch, rather than from a neutral grain spirit."  [Mem at 4:4-6.]  That language does not appear on the label at issue and as explained previously, is contrary to the legal standard for "vodka."  27 C.F.R. § 5.22(a)(1) ("'Vodka' is *neutral spirits* so distilled, or so treated after distillation . . . ." (emphasis added)).  In order for the Court to assess whether Plaintiff's is an objectively reasonable interpretation, Hofmann needs to tell us where he came up with his understanding.

Second, Hofmann argues that "[a] reasonable consumer would believe that the vodka purporting to be 'Handmade' was produced in a still without the use of automated, technologically advanced stills."  [Mem. at 4:8-10.]  Elsewhere he asserts that a reasonable consumer would be deceived by use of the term "handmade," because in his mind that term means "made by hand, rather than by automated machinery."  [Mem at 14:2.]  At least these arguably are tethered to the label, which actually states "Crafted in an Old-Fashioned Pot Still."[1]  But Plaintiff never attempts to explain how the use of some modern equipment—*e.g.*, safety technology that prevents fires and keeps volatile alcohol from exploding, but which do not affect the crafting or distillation process—disqualify the old-fashioned pot-still *process* used by Fifth Generation from being handmade.  He admits that Tito's Handmade Vodka was formerly "handmade," so his argument means that there would have to be some established line beyond which the

---

[1] Plaintiff offers some puzzling comparisons to "bathtub gin" and "homebrewed beer."  If he really thought, based upon the label, that he was buying the equivalent of "bathtub gin," then his interpretation of the label is so implausible, unreasonable and idiosyncratic that it merits no further comment.  Moreover, even a "bathtub" would have to be filled and heated.  Plaintiff's examples undermine his arguments.

term could not be used.  Where is the line crossed, and what is the source of authority establishing the line?  Plaintiff cites no regulation, no industry standard, no custom or practice, or anything authoritative for his definition.[2]

Plaintiff undermines his own definition by arguing that "discovery will demonstrate that a reasonable consumer would consider vodka made with certain basic tools, but without automated machinery, to be handmade."  [Mem. at 15:19-21.]  If his definition is widely shared by consumers, he does not need discovery from Fifth Generation to support this averment.  In reality, as Fifth Generation' motion observed, "handmade" must be considered in the context of the product.  Even under Plaintiff's proffered definition, neutral spirits, an old-fashioned pot still and a heat source could, in context, represent "certain basic tools" for making vodka, which he acknowledges could still be called "handmade."

Third, Plaintiff argues that "a reasonable consumer would believe that a vodka purporting to be 'Handmade' was produced in small batches."  [Mem. at 4:12-13.]  This statement likewise does not appear anywhere on the label.  Similarly, Hofmann offers no definition for what he means by "small," nor any authoritative source for the definition.  This argument, and its use of the word "produced," is also at odds with the Amended Complaint, which also discusses "bottling" in "extremely large quantities."  [Am. Compl., para. 1.]  The "batch" – i.e., the alcohol that is distilled in the old-fashioned pot stills, is different from a bottling run, whose size would depend upon orders to be filled.  The Amended Complaint offers no explanation for how the size of a run bottling

---

[2] Plaintiff takes issue with Fifth Generation's reference to the Wine Enthusiast ratings in its motion.  Yet, taking the label as a whole, this information is properly before the Court and, notably, Plaintiff does not deny that the statements are true, or that a "reasonable consumer" would put stock in such ratings in making a purchase decision.  Likewise, Plaintiff's objection to facts regarding the "supposed process by which Tito's is made" is quite puzzling.  Ostensibly, this case is about what a "reasonable consumer" would believe about how Tito's Handmade Vodka is made based upon what the label says. Fifth Generation's motion said nothing that was not either directly stated on the label or put into context what was said on the label in order to emphasize how Plaintiff has twisted certain words.  Fifth Generation has not asked the Court to base the decision on any factual matters not stated on the label.

3

finished product would affect the quality or have anything to do with how the vodka is crafted.  Fifth Generation cannot respond because it cannot figure out what Plaintiff is even complaining about.

Further, although Plaintiff appears to be saying these aspects of Fifth Generation's process result in an inferior end product, he does not say how or provide any basis for comparison of what is superior or inferior, and according to what criteria.  At most, Plaintiff parrots assertions from a *Forbes* article, but he offers no personal knowledge.

These deficiencies go to the very heart of Plaintiff's Amended Complaint.  Fifth Generation is fully prepared to defend against claims based upon what its label actually said.  But it should not have to defend itself against a complaint built upon things the label did not say, much less artificial extrapolations from things it did not say.

## B. Regulatory Compliance Triggers California's Safe Harbor.

Plaintiff's effort to take the Tito's Handmade Vodka labels beyond the safe harbor afforded under California law is without merit.  Plaintiff argues that Fifth Generation confused requirements with permission, and since nothing "requires" the label to say handmade, Fifth Generation cannot avail itself of the safe harbor.  This is sophistry.  A federal agency gave its approval for Fifth Generation to use its labels, including the claim "Handmade."  The significance of a Certificate of Label Approval ("COLA") is two-fold: (i) a COLA represents the TTB's determination the labels' "Handmade" claim complied with the regulation; and (ii) a COLA represents the approval of the federal TTB to sell bottles bearing that claim.

Plaintiff's argument would mean no distiller could rely on the TTB's approval, but would be subject to *ad hoc* after-the-fact judicial review, and run the risk that a court would substitute its own view of the label.  This would put parties like Fifth Generation in an untenable, "sell at your own risk" position, whereby a court could later call something "unfair" even though it expressly permitted by law.

This is where the safe harbor comes in.  The COLAs permit Tito's Handmade Vodka bearing the approved "Handmade" claim to be sold lawfully.[3]  That is conduct protected by the safe harbor.  *Cel-Tech Comms. Inc. v. L.A. Cellular Tel. Co.,* 20 Cal. 4th 163, 182 (1999).  Plaintiff chides Fifth Generation for its lack of authority in this context, but if the law really required Fifth Generation's labels to pass a dual gauntlet, surely Plaintiff would be able to cite it.  He has not and cannot.  *See, e.g.*, *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 2014 WL 866571, at *3 (D. Mass. Mar. 5, 2014) (applying California law to dismiss claims under safe harbor).  Indeed, the authorities he does rely on, dealing with gas pumps and credit cards, are quite far afield.[4]

Plaintiff also argues that the COLAs do not rise to the level of federal preemption and resorts to policy arguments.  Fifth Generation has not made a preemption argument.  Rather it relied on the state law safe harbor, as interpreted and applied by binding Ninth Circuit precedent.  Plaintiff's policy argument fares no better as it is not supported by law or logic (or even public policy).  The controlling policy is the requirement for Fifth Generation to submit its labels for TTB approval before selling bottles bearing them and to undergo periodic audits of its labels and production processes by the TTB to verify continued compliance.  Thus, the "policy" is that Fifth Generation is free to sell bottles bearing the approved labels without fear of this kind of after-the-fact litigation.

---

[3] Plaintiff complains that Fifth Generation has gone beyond the four corners of the FAC by discussing its interactions with the TTB.  The only "factual" issue presented by the COLA is the fact that they were issued.  The certificates themselves are properly before the Court in connection with Fifth Generation's request for judicial notice.  And the significance of the COLAs—as representing TTB approval—is legal, not factual.

[4] Plaintiff cites *Krumme v. Mercury Insurance Co.*, 123 Cal. App. 4th 924 (2004) for the proposition that "the "safe harbor" provision only applies to statutes and not regulations…" [Memo. at p. 8 n.3.]  Nevertheless, as he must, Plaintiff acknowledges that this argument is foreclosed by *Davis v. HSBC Bank Nevada, N.A.*, 691 F3d 1152, 1165-66 (9th Cir. 2012) which expressly considered *Krumme* and declined to follow it.  *See also Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1082 (9th Cir. 2007) (regulations intended to permit challenged conduct afford safe harbor protection).

### C.     Plaintiff's Reliance On A Magazine Article Does Not Satisfy *Kearns*

Plaintiff cites the *Forbes* article as support for his factual allegations, suggesting that he can substitute a reporter's presumed investigation for his own.  Respectfully, the existence of the *Forbes* article might be useful to show a number of things, but it cannot pinch-hit for facts.  Plaintiff argues that the article came to light "only **after** Plaintiff retained Class Counsel."  [Mem. at 12:13.]  If that is the case, why reference the article at all?  Plaintiff needs to plead facts based on his own "investigation" because his knowledge (and when he acquired it) not only are the touchstone for plausibility, but may trigger the statute of limitation even earlier (not to mention call into question the reasonableness of his conduct, depending on when and under what circumstances he first purchased the product).

Plaintiff's Amended Complaint also alleges that "Defendants also concealed the fact that the Vodka is no longer made in old fashioned pot stills of the variety TITO's proudly displayed in the 2013 *Forbes* article . . . . "  [Am. Compl. ¶ 12.]  This is a qualitative allegation that suggests that the product now is inferior compared to the product of some former process.  Plaintiff cannot rely on a magazine article for that allegation.  If he has been buying Tito's Handmade Vodka for years, and has noticed some change in quality or taste, he should plead those facts and (i) what he believes the change to be; and (ii) why he kept buying it.  Then the Court could assess whether his claims are plausible in light of those facts.

This is not, as Plaintiff suggests, a matter of pleading evidence; it is about pleading **facts** that would make the claim plausible.  Here, once the *Forbes*-based allegations are stripped away, all Plaintiff offers to support this lawsuit is this statement: "In sum, the filing was predicated on a common sense belief that there was no way for FG [sic] to be truly 'handmade' given the sheer volume of its sales . . . . "  [Mem. at 12:11-12.]  He might as well have said "commercial success is reason enough to file suit, and I'm informed and believe I'll get the facts in discovery."  This does not cut it under *Iqbal*.

Plaintiff cites four cases ostensibly justifying his reliance on the *Forbes* article. His lead case is *Dichter-Mad Family Partners, LLP v. United States,* 709 F.3d 749 (9th Cir. 2013), which affirms the district court's dismissal of a complaint. That plaintiff had attempted to support his complaint by incorporating by reference an Inspector General's Report, and the district court stated that "items such as newspaper articles, commentaries and editorial cartoons are not properly incorporated into the complaint by reference." *Dichter-Mad Family Partners, LLP v. U.S.,* 707 F. Supp. 2d 1016, 1019 (C.D. Cal. 2010). Similarly, in *Iqbal v. Ashcroft*, the purported "source" of the factual allegations there was an Inspector General's Report on the imprisonment of September 11 detainees. *See* 556 U.S. 662, 667, 129 S. Ct. 1937, 1943 (2009). Here, Plaintiff argues that parroting the contents of the article, rather than incorporating it by reference, is not only proper but also ***requires the Court to presume the contents are true***. Plaintiff's argument amounts to "if I find something in print somewhere, I should be able to file suit and start taking discovery" and would render *Iqbal* a nullity.

Plaintiff's other authorities are also inapposite. In *Gager v. United States*, the case was dismissed for lack of subject matter jurisdiction based on a lack of proof of an exception to sovereign immunity—not for failure to state a claim or plead with particularity. 149 F.3d 918, 920 (9th Cir. 1998). In *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303 (3d. Cir. 2014), the Third Circuit *affirmed* the district court's dismissal for failure to state a claim; it did not allow a deficient complaint to move forward.

Finally, Plaintiff relies on *In re McKesson HBOC Inc. Sec. Litig.*, 126 F. Supp. 1248 (N.D. Cal. 2000), for the proposition that a newspaper article can provide the basis for an adequate pleading. Two sentences after the one quoted by the Plaintiff, however, the court states: "To the extent that a newspaper article ***corroborates plaintiff's own investigation*** and provides detailed factual allegations, it can -- ***at least in combination with plaintiff's investigative efforts*** -- be a reasonable source of information and belief allegations." *Id*. at 1272 (emphasis added). The court further noted that "the Complaint summarizes the ***results of lead counsel's investigation*** into the HBOC/ITBU accounting

7

irregularities, as well as investigative reporting in the *Wall Street Journal* about the alleged accounting fraud." *Id*. at 1255.  Nowhere does this case stand for the proposition that one article standing alone, with no independent investigation or knowledge to support the allegations, would be sufficient even to satisfy Rule 8.  Facts cannot be outsourced to or insourced solely from a magazine article, no matter how respected the publication might be.

### D.   **Plaintiff's Remaining Arguments Are Nothing More Than Distractions.**

#### 1.   **Standing.**

Plaintiff argues the allegation that he purchased Tito's Handmade Vodka is sufficient to create injury in fact for purposes of standing.  Yet, the cases he cites contain factual allegations that are missing from the FAC.  For instance, in *Carrea v. Dreyer's Grand Ice Cream, Inc*., the plaintiff alleged he bought the defendant's product instead of a cheaper product due to the alleged misrepresentations.  2011 WL 159380, at *2 (N.D. Cal. Jan. 10, 2011).  Here, however, there are no allegations Plaintiff would have acted differently if the labels did not contain the alleged misrepresentation.  *See Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1556 (2011).

#### 2.   **Negligent Misrepresentation.**

Plaintiff's negligent misrepresentation claim fails to plead that Fifth Generation made a material a statement of fact without reasonable grounds for believing it is true. *See Apollo Capital Fund LLC v. Roth Capital Partners, LLC,* 158 Cal. App. 4th 226, 243 (2007).  The TTB's approval of "Handmade" in the label gave Fifth Generation more than reasonable grounds to use, and to keep using, that descriptive term.  Plaintiff ignores that point altogether and tries to turn "handmade" into a factual issue that cannot be decided in a motion to dismiss.  The "truth" of the claim, and the "reasonableness" of making the claim, must be measured against some standard.  Fifth Generation met the TTB standard.

### 3.   <u>Puffery Is A Non-Issue.</u>

Plaintiff asserts that "handmade" is not puffery.  Fifth Generation has not claimed it is.  This argument is pure misdirection.

### 4.   <u>Privity.</u>

Plaintiff misreads Fifth Generation's motion as requiring privity of contract.  That argument also was never made.   Instead, Fifth Generation argued that Plaintiff's averment that he had given money to Fifth Generation was inconsistent with his admission that he bought at retail.  The point was that Plaintiff's pleading is not only factually deficient, but that the few facts it does allege are internally inconsistent.

### 5.   <u>Plaintiff's Purchase History.</u>

Plaintiff argues that Rule 9(b) does not require him to provide any detail about his purchasing history.  He relies on other labeling cases,[5] but those cases did not involve qualitative objections like those Plaintiff has pled here.  Arguing about the sufficiency of other pleadings, with other facts and other causes of action, is not enlightening here.

Plaintiff's theory puts his purchasing history at issue in ways that were not at issue in the cases he relies upon.  Plaintiff's claim is based upon some qualitative difference in Tito's Handmade Vodka due to the distilling process.  He needs to plead facts that support that theory.  The same is true for his assertion that he would not have bought "but for" the label based upon the presumed superior quality of "handmade" vodka.  He cannot avoid his obligation by pleading that he bought once within the purported class period.  Fifth Generation should not be put to the burden of discovery to learn these basic facts that are known to the Plaintiff alone.  Rule 9(b) sets the bar higher than that.

### 6.   <u>Class Certification.</u>

Fifth Generation's motion merely pointed out that the Amended Complaint alleged no facts to justify applying California law to a purported nationwide class based

---

[5] *Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111 796 (N.D. Cal. May 26, 2011) (no qualitative claim); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d. 1111, 1126 (N.D. Cal. 2010) (no qualitative claim); *Werdebaugh v. Blue Diamond Growers*, 2013, WL 5497236 (N.D. Cal. 2013) (no qualitative claim).

on one person's purchase of one bottle in San Diego.  Plaintiff does not answer that question.  If the case gets beyond the pleading stage, then the class definition can be addressed later.  But if anyone has jumped the gun with his arguments, it is Plaintiff.

## III.  <u>CONCLUSION</u>

For these reasons, Fifth Generation's motion to dismiss should be granted.


DATED:  February 2, 2015                    Respectfully submitted,

                                            GREENBERG TRAURIG, LLP


                                            <u>/s/ Ricky L. Shackelford</u>
                                            Attorneys for Defendant
                                            Fifth Generation, Inc.

*LA 131985431v3*