# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY HOFMANN, an individual, on behalf of all others similarly situated,<br><br>         Plaintiff,<br>vs.<br><br>FIFTH GENERATION, INC., a Texas corporation,<br><br>         Defendant. | CASE NO. 14-cv-2569 JM (JLB)<br><br>ORDER GRANTING IN PART AND DENYING IN PART FIFTH GENERATION, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT |

This order addresses Fifth Generation, Inc.'s ("Fifth Generation's") motion to dismiss Plaintiff's first amended complaint or, alternatively, for a more definite statement, (Doc. No. 8), and its related request for judicial notice, (Doc. No. 8-2). The matters were fully briefed and were found suitable for resolution without oral argument pursuant to Local Rule 7.1.d.1.

For the reasons set forth below, the court grants Fifth Generation's request for judicial notice; grants Fifth Generation's motion to dismiss Plaintiff's statutory claims; denies Fifth Generation's motion to dismiss Plaintiff's claim for negligent misrepresentation; denies Fifth Generation's alternative request for a more definite statement; and grants Plaintiff's request for leave to amend.

## BACKGROUND

Plaintiff Gary Hofmann complains that the labeling of Fifth Generation's product called Tito's Handmade Vodka ("Tito's") is false because, in reality, the vodka is made by means of a "highly mechanized process that is devoid of human hands." (Doc. No. 1, Exh. A ¶ 1.) On September 15, 2014, he initiated this lawsuit

in San Diego Superior Court. (Doc. No. 1 at 2.) On September 30, 2014, he filed the operative first amended complaint ("FAC") as a putative nationwide class action on behalf of retail purchasers of Tito's during the last four years. (Doc. No. 1, Exh. A ¶¶ 10, 19.)

Plaintiff alleges that in August 2014, he purchased Tito's at a BevMo! store in San Diego, California. (Id. ¶ 15.) It was prominently marked with the word "Handmade," and it was labeled as being "Crafted in an Old Fashioned Pot Still by America's Original Microdistillery." (Id.) He claims that he saw the label, relied on it, and believed he was buying a high-quality product made by human hands, not mass-produced in large industrial vats. (Id. ¶¶ 16–17.)

He claims that the Tito's labeling is false and misleading because, in reality, the vodka is mass-produced in large quantities from commercially manufactured neutral grain spirit that is trucked and pumped into the Tito's facility and distilled in modern, technologically advanced stills. (Id. ¶¶ 1, 11.) He quotes a 2013 Forbes magazine article on Tito's that described "massive buildings containing ten floor-to-ceiling stills and bottling 500 cases an hour." (Id. ¶ 11.)

He alleges further that when Fifth Generation represented to the public that Tito's is "Handmade," it concealed the highly automated nature of the manufacture and bottling process, and it concealed the fact that Tito's is no longer made in an old-fashioned pot still like the one pictured in the Forbes article, which was "cobbled from two Dr. Pepper kegs and a turkey-frying rig." (Id. ¶ 12.) He contends that disclosure of that information was necessary to make the Tito's label truthful and not misleading because most consumers are unaware of the probability that purportedly handmade products are actually mass-produced, and many believe that a handmade product is "made in small amounts [and] of inherently superior quality." (Id. ¶¶ 12–13.)

Consequently, Plaintiff claims, he and other consumers were fraudulently induced to pay inflated prices for vodka they believed was genuinely handmade,

1  when it was not. (Id. ¶¶ 14, 18.) "Essentially," he says, "the Vodka is not worth
2  the purchase price paid." (Id. ¶ 18) On that basis, he asserts four causes of action
3  under California law: (1) violation of California's Unfair Competition Law
4  ("UCL"), Business & Professions Code § 17200 et seq.; (2) violation of California's
5  False Advertising Law ("FAL"), Business & Professions Code § 17500 et seq.;
6  (3) violation of California's Consumers Legal Remedies Act ("CLRA"), Civil
7  Code § 1750 et seq.; and (4) negligent misrepresentation. (Id. ¶¶ 37–79.) He seeks
8  restitution of the money class members paid to buy the offending vodka and an
9  injunction prohibiting continued violation of the UCL. (Id. at 17–18.)

10        On October 28, 2014, Fifth Generation removed the case to this court
11  pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), asserting that
12  Plaintiff is a California citizen, Defendant is a Texas citizen, and the class claims
13  place in controversy more than $5 million dollars. (Doc. No. 1 at 3–7.)

14        On December 18, 2014, Fifth Generation filed the instant motion to dismiss
15  the FAC or, alternatively, for a more definite statement, (Doc. No. 8), and a related
16  request for judicial notice, (Doc. No. 8-2). Plaintiff opposed the motions on January
17  26, 2015, (Doc. No. 9), and Fifth Generation replied on February 2, 2015, (Doc.
18  No. 10).

19                              **DISCUSSION**

20  **A.    Request for Judicial Notice**
21        Fifth Generation asks the court to take judicial notice of two items:
22  (1) copies of Alcohol and Tobacco Tax and Trade Bureau ("TTB") certificates
23  approving Tito's labeling during the last four years; and (2) copies of the front and
24  back label of the Tito's one-liter bottle. (Doc. No. 8-2 & Exhs. 1–2.)

25        Federal Rule of Evidence 201 provides that courts may take judicial notice
26  of facts that are not subject to reasonable dispute because they are generally known
27  or are capable of accurate and ready determination. See Fed. R. Evid. 201(b). The
28  court may take notice of such facts on its own, and "must take judicial notice if a

party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c).  Matters of public record are proper subjects of judicial notice, but a court may take notice only of the existence and authenticity of an item, not the truth of its contents.  See Lee v. City of Los Angeles, 250 F.3d 668, 689–90 (9th Cir. 2001).  Under these rules, courts may take judicial notice of "the records and reports of administrative bodies." United States v. Ritchie, 342 F.3d 903, 909 (9th Cir. 2003) (quotation marks omitted).

Plaintiff does not oppose Fifth Generation's request, and the court finds that these items are appropriate for judicial notice because they are matters of public record and the parties do not dispute their authenticity.  The court, therefore, grants Fifth Generation's request for judicial notice.

**B.     Motion to Dismiss**

Fifth Generation contends that all of Plaintiff's causes of action must be dismissed for failure to state a claim.

**1.     Legal Standard**

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the pleadings.  To overcome such a motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Facts merely consistent with a defendant's liability are insufficient to survive a motion to dismiss because they establish only that the allegations are possible rather than plausible. See id. at 678–79.  The court should grant relief under Rule 12(b)(6) if the complaint lacks either a cognizable legal theory or facts sufficient to support a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

When ruling on a motion to dismiss, the court must take all allegations as true and construe them in the light most favorable to the plaintiff. See Metlzer Inv. GMBH v. Corinthian Colls., Inc., 540 F.3d 1049, 1061 (9th Cir. 2008). "Review is limited to the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." Id.

Federal Rule of Civil Procedure 15 provides that courts should freely grant leave to amend when justice requires it. Accordingly, when a court dismisses a complaint for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992) (internal quotation marks omitted). Amendment may be denied, however, if amendment would be futile. See id.

**2.    Injury and Causation**

Fifth Generation asserts that all of Plaintiff's causes of action must be dismissed because he has not adequately alleged an economic injury or any other damage that was caused by Tito's "Handmade" label. (Doc. No. 8-1 at 19 & n.7.)

To litigate in federal court, a plaintiff must show as a "jurisdictional prerequisite" that he or she has Article III standing. Gerlinger v. Amazon.com Inc., 526 F.3d 1253, 1255 (9th Cir. 2008). "Article III standing requires proof of (1) injury-in-fact, (2) causation, and (3) redressability." Id. (numbers added).

Similarly, Plaintiff's claims all require him to show that he was injured as a result of the alleged misrepresentation. To have statutory standing to sue under the UCL and FAL, a person must have "suffered an injury in fact and . . . lost money or property as a result" of the challenged conduct. Cal. Bus. & Prof. Code §§ 17204, 17535. Similarly, the CLRA provides that "[a]ny consumer who suffers any damage as a result of" a violation of the CLRA can bring an action. Cal. Civ. Code § 1780(a). "[R]esulting damage" is also an element of a claim for negligent misrepresentation under California law. See Glenn K. Jackson Inc. v. Roe, 273 F.3d

1192, 1200 n.2 (9th Cir. 2001) (listing the elements).

The California Supreme Court's analysis of the statutory standing requirements in Kwikset Corp. v. Superior Court, 51 Cal. 4th 310 (2011), is instructive here and warrants some discussion.  In Kwikset, the plaintiffs claimed that Kwikset's locksets labeled as "Made in U.S.A." violated the UCL and FAL because they contained foreign-made parts or involved foreign manufacture.  See id. at 317.  The plaintiffs alleged that they saw and relied on the labels in deciding to buy the locksets, and that they would not have bought them otherwise.  See id. at 319.  The trial court concluded that those allegations were enough for statutory standing.  See id.  The California Court of Appeal disagreed.  It reasoned that although the plaintiffs had "adequately alleged an injury in fact, they had not alleged any loss of money or property," id. at 319, because although they had spent money, they had not alleged that the locksets were overpriced or defective, and they had received the benefit of their bargain, see id. at 320, 332.

The California Supreme Court reversed.  It began by explaining that the California injury-in-fact requirement was meant to incorporate the Article III meaning of that term, and, although the UCL and FAL require both an injury in fact and a loss of money or property, a plaintiff who has lost money or property has suffered a classic injury in fact.  See id. at 322–25.  It explained that there are "innumerable ways" for a plaintiff to show economic injury, including by showing that the consumer paid more than he or she would have paid otherwise, or entered a transaction that would otherwise have been unnecessary.  Id. at 323.  Next, as to causation, it reiterated its holdings from In re Tobacco II Cases, 46 Cal. 4th 298, 326 (2009), that a plaintiff alleging false advertising or misrepresentation "must show that the misrepresentation was an immediate cause of the injury-producing conduct" id. at 327 (internal quotation marks omitted), by "demonstrat[ing] actual reliance on the allegedly deceptive or misleading statements," id. at 326 (internal quotation marks omitted).

The Court explained: "To some consumers, processes and places of origin matter." Id. at 328. Purchasing decisions may be "heavily influenced" by information about production processes and places of origin, such as whether food is kosher or halal, whether wine is from a particular locale, whether a diamond is conflict-free, and whether food was produced by union workers, although these considerations have nothing to do with the product's function or performance. Id. at 328–29.

> For each consumer who relies on the truth and accuracy of a label and is deceived by misrepresentations into making a purchase, the economic harm is the same: the consumer has purchased a product that he or she *paid more for* than he or she otherwise might have been willing to pay if the product had been labeled accurately. The economic harm—the loss of real dollars from a consumer's pocket—is the same whether or not a court might objectively view the products as functionally equivalent.

Id. at 329. When representations about processes and origins are not true, the consumer who cares about them has "not received the benefit of his or her bargain." Id. at 332.

Turning to the allegations at issue in the case, the Court held that the plaintiffs had satisfied both the injury and causation requirements by alleging that they "would not have bought the product but for the misrepresentation." Id. at 330.

> That assertion is sufficient to allege causation—the purchase would not have been made but for the misrepresentation. It is also sufficient to allege economic injury. From the original purchasing decision we know the consumer valued the product as labeled more than the money he or she parted with; from the complaint's allegations we know the consumer valued the money he or she parted with more than the product as it actually is; and from the combination we know that because of the misrepresentation the consumer (allegedly) was made to part with more money than he or she otherwise would have been willing to expend, i.e., that the consumer paid more than he or she actually valued the product. That increment, the extra money paid, is economic injury and affords the consumer standing to sue.

Id. Thus, the Court held that "plaintiffs who can truthfully allege they were deceived by a product's label into spending money to purchase the product, and would not have purchased it otherwise . . . have standing to sue." Id. at 317.

In this case, Plaintiff alleges generally as follows:

> 16. When Plaintiff, and Class Members, purchased the Vodka they saw and relied upon the "Handmade" representation that is prominently displayed on all of Tito's Vodka products. . . .
>
> 17. Simply stated, Plaintiff and Class members were deceived as a result of Defendants' false labeling. . . . Plaintiff believed at the time he purchased the Vodka that he was in fact buying a high-quality product made by human hands that was not made in large industrial vats in mass quantities, etc.
>
> 18. Plaintiff suffered an "injury in fact" because Plaintiff's money was taken by Defendants as a result of Defendants' false "Handmade" claim set forth on the offending product. Furthermore, he suffered an "injury in fact" by paying for something he believed was genuinely "Handmade," when it was not. Essentially, the Vodka is not worth the purchase price paid. . . .

(FAC ¶¶ 16–18.)

Fifth Generation contends that these allegations are insufficient because Plaintiff does not claim that there was anything wrong with Tito's or that he could have bought comparable vodka for less, and he does not allege that he would not have bought Tito's but for the allure of the "Handmade" representation. (Doc. No. 8-1 at 19–20.) "At most," it argues, "all he alleged is an exchange of property at a market-priced transaction, with no net loss." (Id. at 20.)

The court is not persuaded that Plaintiff must allege that Tito's was defective, that he could have purchased comparable vodka for less, or that it matters if the vodka he bought was worth (in strictly monetary terms) what he paid for it. Such allegations can suffice to show economic injury, but, under Kwikset, they are not essential. See Hinojos v. Kohl's Corp., 718 F.3d 1098, 1107 (9th Cir. 2013) ("This 'benefit of the bargain' rationale was explicitly rejected in Kwikset.").

However, the court is persuaded that Plaintiff must allege that he would not have bought Tito's but for the "Handmade" representation. Under Kwikset, two causal steps are necessary to tie a labeling misrepresentation to an economic injury: the consumer (1) must have been "deceived by a products label into spending money to purchase the product," and (2) must allege that he or she "would not have

1 purchased it otherwise." 51 Cal. 4th at 317.

2 In this case, the only injury Plaintiff identifies is that he and other class
members paid (or overpaid) for Tito's. He alleges the first causal link when he
says that he bought Tito's in reliance on the "Handmade" representation on the
label. What is missing from his statutory claims is the second link—that he would
not have bought Tito's otherwise. He asserts in his opposition that in paragraph 18
he alleged that if he had "known that Tito's was not in fact handmade, he would
have paid a lesser price for a competing product, or would not have purchased it at
all." (Doc. No. 9 at 4.) As Fifth Generation points out, however, those allegations
do not appear in the paragraphs that support Plaintiff's statutory claims.

Toward the end of the FAC, in the negligent-misrepresentation claim,
Plaintiff alleges for the first time: "Had Plaintiff and Class members known the
actual facts, they would not have taken such action." (Id. ¶¶ 76, 77.) But these
paragraphs are not incorporated by reference into his statutory causes of action.
Moreover, Plaintiff's opposition did not direct the court to these paragraphs.[1]

Accordingly, the court concludes that Plaintiff has adequately alleged
resulting damage for his negligent-misrepresentation claim, but not for his statutory
claims, which must be dismissed. Plaintiff appears to be prepared to cure this
defect, so the court turns to Fifth Generation's remaining challenges and whether
any of them require dismissal of the remaining claim or dismissal without leave to
amend.

**3.     The Safe Harbor**

Fifth Generation contends that Plaintiff's UCL and CLRA claims are barred
by the safe-harbor exception to California's consumer-protection laws. (Doc. No.
8-1 at 12–13.)

---

[1] The court notes that it has no obligation to mine the filings to support a party's motion.

In <u>Cel-Tech Communications v. Los Angeles Cellular Telephone Co.</u>, 20 Cal. 4th 163 (1999), the California Supreme Court recognized a safe harbor under the UCL for actions that the law actually bars, or for conduct the law "clearly permit[s]." <u>Id.</u> at 183.  The Court explained:

> Although the unfair competition law's scope is sweeping, it is not unlimited.  Courts may not simply impose their own notions of the day as to what is fair or unfair.  Specific legislation may limit the judiciary's power to declare conduct unfair.  If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination.

<u>Id.</u> at 182.  In short, "[a] plaintiff may . . . not plead around an absolute bar to relief simply by recasting the cause of action as one for unfair competition." <u>Id.</u> (internal quotation marks omitted).  The Ninth Circuit has recognized that the safe harbor applies to claims brought under the CLRA.  <u>See</u> <u>Alvarez v. Chevron Corp.</u>, 656 F.3d 925, 933–34 (9th Cir. 2011) (applying the safe harbor to a CLRA claim).[2]

The dispute in this case regards what kind of government authorization is sufficient to invoke the safe harbor.  The California Supreme Court in <u>Cel-Tech</u> spoke only of exceptions created by "specific legislation." 20 Cal. 4th at 182.  The Ninth Circuit recently extended the safe harbor to protect conduct that is authorized by regulation.  <u>See</u> <u>Davis v. HSBC Bank Nevada, N.A.</u>, 691 F.3d 1152, 1169 & n.8 (9th Cir. 2012) ("California intermediate courts agree with our conclusion that regulations can create safe harbors.").

Fifth Generation contends that the Tito's labeling is protected by the safe harbor because the TTB approved the Tito's labels pursuant to TTB regulations, which require preapproval of alcohol-beverage labels, <u>see</u> 27 C.F.R. § 5.55(a),[3] and prohibit false and misleading labeling and brand names that create erroneous

---

[2] Fifth Generation does not assert or provide authority to show that the safe harbor applies to the FAL.

[3] The relevant portion of 27 C.F.R. § 5.55(a) provides: "Distilled spirits shall not be bottled or removed from a plant . . . unless the proprietor possesses a certificate of label approval."

impressions as to any characteristic of the product, see 27 C.F.R. §§ 5.34(a),[4] 5.42(a).[5]  (Doc. No. 8-1 at 7, 12.)

Plaintiff counters that an agency's label approval pursuant to a regulation does not necessarily carry the same force of law as a regulation.  (Doc. No. 9. at 8–10.)  Specifically, he points out that no regulation actually authorizes the use of "Homemade" on the Tito's label; that unlike the rigorous FDA approval process for prescription-drug labels (which can create a safe harbor), the TTB approval process hinges on self reporting and reflects only that Fifth Generation represented to the TTB that Tito's is handmade; and that Fifth Generation did not cite any authority supporting its position that the TTB's label approvals rise to the level of federal law so that they justify the application of the safe-harbor defense.  (Id.)  In support of his position, he cites Koenig v. Snapple Beverage Corp., 713 F. Supp. 2d 1066 (E.D. Cal. 2010), which held that the FDA's policy regarding the use of the word "natural" did not have the force of federal law for purposes of the safe harbor because it was not the result of a formal deliberative process akin to notice-and-comment rulemaking or adjudication.  See id. at 1076.

Fifth Generation replies that if the law really required its labels to "pass a dual gauntlet, surely Plaintiff would be able to cite it.  He has not and cannot."

---

[4] 27 C.F.R § 5.34(a) provides:

No label shall contain any brand name, which, standing alone, or in association with other printed or graphic matter, creates any impression or inference as to the age, origin, identity, or other characteristics of the product unless the appropriate TTB officer finds that such brand name . . . conveys no erroneous impressions as to the age, origin, identity, or other characteristics of the product.

[5] 27 C.F.R. § 5.42(a) provides:

Bottles containing distilled spirits, or any labels on such bottles, . . . shall not contain:

(1) Any statement that is false or untrue in any particular, or that, irrespective of falsity, directly, or by ambiguity, omission, or inference, or by the addition of irrelevant, scientific or technical matter, tends to create a misleading impression.

(Doc. No. 10 at 5.) As support, it cites In re Celexa & Lexapro Marketing & Sales Practices Litigation, 2014 WL 866571 (D. Mass. Mar. 5, 2014), which applied the safe harbor to dismiss claims that a prescription-drug label was misleading, see id. at *3–4, but which also distinguished Koenig and another case, reasoning: "In contrast to the insufficient regulatory frameworks in [Koenig and the other case], the prescription drug industry is subject to comprehensive regulations promulgated by the FDA," id. at *4.

Having reviewed the parties' submissions, the court concludes that Fifth Generation has not shown that the safe harbor bars Plaintiff's claims. Its motion does not cite any authority to show that the safe harbor extends to informal agency action of the type at issue here,[6] and it does not meaningfully address the distinctions raised by Plaintiff, Koenig, or In re Celexa. Although it claims that the TTB specifically investigated and approved of the "Handmade" claim, those facts are not properly before the court and cannot be considered at this stage. Moreover, from the regulations Fifth Generation provided to the court and the apparent absence of any guidance from the TTB regarding the meaning of the word "Handmade," it is not clear that such representations are necessarily within the TTB's regulatory purview. Thus, it is not clear at this point that the TTB's approval of the labels is sufficient to invoke the safe harbor.

**4.    Whether a Reasonable Consumer Could Be Deceived**

Fifth Generation contends that no reasonable consumer could be deceived by Tito's representation that it is "Handmade." (Doc. No. 8-1 at 14–18.)

---

[6] In Reid v. Johnson & Johnson, — F.3d —, 2015 WL 1089583 (9th Cir. Mar. 13, 2015), which was decided after the briefing on this matter was complete, the Ninth Circuit joined the Third Circuit in holding that "[c]reation of federal law should demand at least the same formality for purposes of preemption as it does for purposes of *Chevron* deference." Id. at *9. In doing so, the Ninth Circuit agreed with Fellner v. Tri-Union Seafoods, L.L.C., 539 F.3d 237 (3d Cir. 2008), which Plaintiff's case, Koenig v. Snapple Beverage Corp., 713 F. Supp. 2d 1066 (E.D. Cal. 2010), relied on for its conclusion regarding the safe harbor, see id. at 1074–75. The principles discussed in Reid are likely to be instructive going forward.

Claims under the UCL, FAL, and CLRA that representations are misleading are governed by the "reasonable consumer" test, which asks whether "members of the public are likely to be deceived." Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008) (internal quotation marks omitted). Whether a business practice is deceptive generally presents a question of fact that cannot be resolved on a motion to dismiss. See id. In rare circumstances, however, courts can conclude as a matter of law that members of the public are not likely to be deceived. See id. at 939. In Freeman v. Time Inc., 68 F.3d 285 (9th Cir. 1995), for example, the Ninth Circuit upheld the dismissal of a challenge to a mailer that suggested that the recipient had won a million-dollar sweepstakes because "the mailer explicitly stated multiple times that the plaintiff would only win the prize if he had the winning sweepstakes number." Williams, 552 F.3d at 939. In Freeman, "it was not necessary to evaluate additional evidence regarding whether the advertising was deceptive, since the advertisement itself made it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." Id.

Here, Fifth Generation argues that no reasonable consumer could be deceived because vodka, by definition, is created by heating neutral spirits and distilling the vapors, which any reasonable person knows must be done using some sort of equipment. (Doc. No. 8-1 at 15.) Moreover, it says, the rest of the Tito's labeling clearly explains to consumers that "Handmade" means that it is crafted in an old-fashioned pot still. (Id. at 15–16.) Without citing any case dismissing a similar claim, it asserts: "This is classic *Iqbal* fodder." (Id.)

Plaintiff counters that the fact that vodka must be heated and distilled does not mean that it cannot be "Handmade," as that term is understood by a reasonable consumer, and how a reasonable consumer would construe the term cannot be resolved at this stage. (Doc. No. 9 at 15–16.) He cites Jou v. Kimberly-Clark Corp., 2013 WL 6491158, at *7 (N.D. Cal. 2013), which concluded that the meaning a consumer would ascribe to "pure & natural" could not be resolved at

1  the 12(b)(6) stage, and Chacanaca v. Quaker Oats Co., 752 F. Supp. 2d 1111, 1125
2  (N.D. Cal. 2010), which similarly refused to dismiss a case challenging a
3  representation that a Quaker Oats product was "wholesome."
4        In the court's view, the representation that vodka that is (allegedly) mass-
5  produced in automated modern stills from commercially manufactured neutral grain
6  spirit is nonetheless "Handmade" in old-fashioned pot stills arguably could mislead
7  a reasonable consumer. This is not, therefore, an issue that can be resolved at this
8  stage.
9        **5.     Particularity of the Pleadings**
10       Fifth Generation asserts that Plaintiff's allegations are insufficiently
11 particular to satisfy the requirements of Federal Rule of Civil Procedure 9(b),
12 which, it claims, applies to all of Plaintiff's claims because they are grounded in
13 fraud. (Doc. 8-1 at 9–10.)
14       Rule 9(b) requires plaintiffs to "state with particularity the circumstances
15 constituting fraud." Fed. R. Civ. P. 9(b). A court may dismiss a claim for failing
16 to satisfy Rule 9(b)'s heightened pleading requirements. See Vess v. Ciba-Geigy
17 Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003). To avoid dismissal, the plaintiff
18 must include "the who, what, when, where, and how" of the alleged fraud. Id. at
19 1106 (internal quotation marks omitted). The complaint "must set forth what is
20 false or misleading about a statement, and why it is false," and must "be specific
21 enough to give defendants notice of the particular misconduct so that they can
22 defend against the charge and not just deny that they have done anything wrong."
23 See id. (internal quotation marks omitted).
24       Rule 9(b) applies to misrepresentation claims brought under the California
25 consumer-protection statutes. See Kearns v. Ford Motor Co., 567 F.3d 1120, 1125
26 (9th Cir. 2009) (claims under UCL and CLRA). It is unclear whether Rule 9(b) also
27 applies to a negligent-misrepresentation claim. See Amato v. Narconon Fresh Start,
28 2012 WL 5390196, at *7 (S.D. Cal. Oct. 23, 2014) (describing the "split among

district courts in the Ninth Circuit").

Regardless, the court need not decide whether Rule 9(b) applies to all of Plaintiff's causes of action because—except for the missing allegation discussed above—his allegations have met the heightened requirements. He alleges that he encountered Tito's at a Bevmo! store in August 2014; that he saw and relied on the label's claim that Tito's is "Handmade" and bought it as a result; and that Tito's is not, in reality, handmade because it is mass-produced using a highly mechanized process that is devoid of human hands. These facts set forth the circumstances of the alleged fraud and why it is purportedly false, and are sufficient to allow Fifth Generation to defend itself.

### 5. Facts from the *Forbes* Article

Fifth Generation argues that Plaintiff's claims are improperly pleaded because they are based on "hearsay statements in a magazine article" rather than on his own personal knowledge. (Doc. 8-1 at 16.) But it does not explain why this matters at the motion-to-dismiss stage, and it does not cite any authority to show that facts reported in a reputable magazine cannot be the basis of plausible allegations. It has not, therefore, shown that this is a reason to dismiss the complaint.

### 6. Consumer Reliance After the *Forbes* Article

Next, Fifth Generation contends that "no one who purchased [Tito's] after the article ran in June 2013 could reasonably have relied on Tito's 'Handmade' claim." (Doc. No. 8-1 at 21.) At that point, it asserts, "Plaintiff had at least constructive knowledge of the 'truth' about Tito's." (Id.) It does not, however, cite anything to show that information from a single magazine article (or any other source) can be imputed to consumers in cases like this. Accordingly, it has not shown that the complaint must be dismissed for this reason.

### 7. Sufficiency of the Class Allegations

Fifth Generation challenges the sufficiency of Plaintiff's class allegations on two grounds. First, it asserts that Plaintiff has not asserted any facts to justify

1  nationwide application of the California consumer-protection statutes.  (Doc. No.
2  8-1 at 21.)  Its only citation in support of this argument is to Mazza v. American
3  Honda Motor Co., Inc., 666 F.3d 581 (9th Cir. 2012), which it says shows that
4  "[t]he Ninth Circuit has recognized this as a basis for denying class certification."
5  (Id.)  Second, it contends, without citing any authority, that Plaintiff has not alleged
6  commonality and typicality with sufficient particularity because he has not said
7  when he first encountered Tito's or under what circumstances, and he does not say
8  how often he bought Tito's.  (Id. at 22.)
9  　　　Plaintiff counters that Fifth Generation's attempt to defeat a nationwide
10 class is premature.  (Doc. No. 9 at 24–25.)  He cites two recent decisions that
11 concluded that it was premature to address the choice-of-law problem on a motion
12 to dismiss.  See Czuchaj v. Conair Corp., 2014 WL 1664235, at *9 (S.D. Cal. April
13 18, 2014); Werdebaugh v. Blue Diamond Growers, 2013 WL 5487236, at *16 (N.D.
14 Cal. Oct. 2, 2013).
15 　　　As Plaintiff's authorities surmise, Mazza was a class-certification decision.
16 It indicates that courts must conduct a thorough choice-of-law analysis relevant to
17 the facts of each case before determining whether a nationwide class can ever be
18 certified.  When, as is the case here, the issue has not been thoroughly briefed, it
19 is not possible to assess the differences between the various bodies of law or the
20 interests of the different states.  Moreover, Fifth Generation has not cited anything
21 to show that any of these considerations require dismissal at the pleading stage.
22 　　　　　　**8.　Motion for a More Definite Statement**
23 　　　Fifth Generation moves, in the alternative, for a more definite statement.
24 　　　Federal Rule of Civil Procedure 12(e) provides for a more definite statement
25 if a pleading "is so vague or ambiguous that the party cannot reasonably prepare a
26 response."  Given the liberal pleading standards under the federal rules, "Rule 12(e)
27 motions are viewed with disfavor and are rarely granted."  Robbins v. Coca-Cola-
28 Co., 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013) (internal quotation marks

omitted). "Even when properly asserted, a motion for more definite statement attacks intelligibility, not simply lack of detail, and will be granted only if the challenged pleading is so indefinite that the defendant cannot ascertain the nature of the claim being asserted, meaning the pleading is so vague that the defendant cannot begin to frame a response." Id. (brackets, citations, and internal quotation marks omitted).

In this case, Fifth Generation's cogent motion belies any assertion that the complaint is too vague to frame a response. Its request for a more definite statement is, therefore, denied.

## CONCLUSION

Fifth Generation's request for judicial notice (Doc. No. 8-2) is GRANTED. Its motion to dismiss the first amended complaint, (Doc. No. 8), is GRANTED IN PART AND DENIED IN PART. Specifically:

1. Plaintiff's UCL, FAL, and CLRA claims are dismissed.
2. Plaintiff's negligent-misrepresentation claim remains.
3. The court DENIES Fifth Generation's alternative request for a more definite statement.
4. The court GRANTS Plaintiff's request for leave to amend.

Any amended pleading must be filed within fourteen days after entry of this order.

IT IS SO ORDERED.

DATED: March 18, 2015

Hon. Jeffrey T. Miller
United States District Judge