JOHN H. DONBOLI (SBN: 205218)
E-mail: jdonboli@delmarlawgroup.com
DEL MAR LAW GROUP, LLP
12250 El Camino Real, Suite 120
San Diego, CA 92130
Telephone: (858) 793-6244
Facsimile: (858) 793-6005

JONATHAN W. CUNEO
Email: jonc@cuneolaw.com
TAYLOR ASEN
Email: tasen@cuneolaw.com
CUNEO GILBERT & LaDUCA, LLP
507 C Street, NW
Washington, DC
Telephone: (202) 789-3960
Facsimile: (202) 789-1813

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY HOFMANN, an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>FIFTH GENERATION, INC., a Texas corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Civil Action No.: 3:14-cv-02569-JM-JLB<br><br>Related to: 3:14-cv-02990-JM-JLB<br><br>**CLASS ACTION**<br><br>**PLAINTIFF GARY HOFMANN'S RESPONSE IN OPPOSITION TO COUNTER-MOTION TO APPOINT INTERIM CO-LEAD COUNSEL**<br><br>Date:       June 15, 2015<br>Time:      10:00am<br>Courtroom: 5D<br>Judge:     Hon. Jeffrey T. Miller |
| MARC CABRERA, an individual and on behalf of the general public,<br><br>Plaintiff,<br><br>vs.<br><br>FIFTH GENERATION, INC.,<br><br>Defendant. | |

**TABLE OF CONTENTS**

I.   INTRODUCTION……………………………………..……………….....…1

II.  LEGAL ARGUMENT ……………………………….….……………….….3

     A.   Legal Standard……………………………….….…………..…..3

          1.   CGL and DMLG Have Taken Significant Step to Advance this
               Litigation………………...…………….….………….4

          2.   CGL and DMLG's Significant Experience Handling Class
               Actions, Other Complex Litigation, and Claims of the Type
               Asserted in This Action.………….……….……….….………7

                    a. CGL.……….……….…………..…………….7

                    b. DMLG.……….……….…….……………….9

          3.   CGL and DMLG Have Significant Experience with the
               Applicable Law……….……….……….….……………..10

          4.   CGL and DMLG Have the Resources Necessary to Advance
               this Litigation.……….……….……….….………………….11

     B.   This Court Should Not Appoint Four Separate Firms as Interim Co-
          Counsel…….……….……….……….….…………….……….…….11

III. CONCLUSION…….……….…………….……….……….…….….12

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Jones Soda Co. Sec. Litig.,* No. C07-1366RSL, 2008 WL 418002, at *3
    (W.D. Wash. Feb. 12, 2008) …………………………..……………………6

*In re Cathode Ray Tube (CRT) Antitrust Litigation,* No. 07-5944 SC, 2008 WL
    2024957, at * 1 (N.D. Cal. May 9, 2008) ……..………………..……11, fn 4

*Levitte v. Google, Inc.,* Nos. 08-03369, 08-03452, 08-03888, 08-04701, 2009 WL
    482252, at *2 (N.D. Cal. Feb. 25, 2009)……........………………..11-12, fn 4

*Parkinson v. Hyundai Motor Am.,* 2006 WL 2289801, No. C06-0345 AHS, slip op.
    at *2 (C.D. Cal. Aug. 7, 2006)…………………………………………….....4

*Sparano v. Lief,* No. 10CV2079 BTM BLM, 2011 WL 830109, at *2 (S.D. Cal.
    Mar. 3, 2011). …………………………………………………………….4

**Federal Rules of Civil Procedure**

Rule 23(g)(3) ……………………………..…………………………………..3

## I. INTRODUCTION

As set forth in Plaintiff Gary Hofmann's underlying Motion to Consolidate [Docket No. 21], there are two related class action lawsuits (the "Actions") presently pending in the Southern District of California courts:

1. *Gary Hofmann v. Fifth Generation, Inc. and Does 1-100*, No. 3:14-cv-02569 (S.D. Cal.) ("the *Hofmann* Action"), and

2. *Marc Cabrera v. Fifth Generation, Inc.*, No. 3:14-cv-02990 (S.D. Cal.) ("the *Cabrera* Action").

Plaintiff Hofmann seeks to represent a putative class consisting of all persons situated within the United States who purchased Tito's Handmade Vodka, as well as a subclass of persons of California consumers who purchased the Handmade Vodka, while Plaintiff Cabrera seeks to represent a putative class consisting of only persons situated in California who purchased Tito's Handmade Vodka. The *Hofmann* and the *Cabrera* cases assert nearly identical claims based on Fifth Generation's unlawful misrepresentations that its vodka is "Handmade."

The *Hofmann* Action was filed in San Diego Superior Court on September 15, 2014 and removed to this Court on October 28, 2014 by way of Defendant's Notice of Removal [Docket No. 1]. The *Hofmann* Action was the first action filed in the United States against Defendant, which led to a rash of copycat filings across the country.[1]  Such copycat filings are unfortunately routine in the current class action landscape. However, the filing of the *Cabrera* Action is an especially puzzling situation because Plaintiff Cabrera, over three months after the commencement of the *Hofmann* Action, filed suit *in the same judicial district* where the Hofmann Action was pending. When the *Cabrera* Action was filed,

---

[1]  Putative class actions were filed against Fifth Generation, Inc. for the same conduct detailed in the Hofmann Complaint shortly after the *Hofmann* Action was first filed, in federal courts in the following states:  Florida (on September 25, 2014), Illinois (October 7, 2014), New Jersey (October 24, 2014), California (again by way of the *Cabrera* Action) (December 22, 2014), Nevada (January 26, 2015), Massachusetts (April 3, 2015), and New York (April 17, 2015).

Defendant had already filed its Motion to Dismiss [Docket No. 8], and the *Hofmann* case was well underway.[2]

Those plaintiffs who filed copycat suits in other states might have colorable (if dubious) arguments that particular home-state statutes render their suits distinct and provide possible benefits to consumers that the *Hofmann* Action fails to provide. But no such argument can be made in this case. In fact, it is hard to see how the Class here benefits from having a third and fourth law firm (i.e., the two firms representing Plaintiff Cabrera) be designated as interim co-counsel in addition to the two firms already representing Plaintiff Hofmann in the *Hofmann* Action.

All of the claims in these Actions concern the conduct of a single defendant (Fifth Generation, Inc.). Pre-certification fact discovery is likely to be focused on a handful of issues. Appointment of two separate groups of attorneys as interim co-counsel is not only unnecessary, but would likely result in waste, potential duplication of effort and billing, and needless complications in the prosecution of the case.

Plaintiff Hofmann originally proposed that two firms be appointed as interim co-counsel in its underlying Motion to Consolidate (the law firms of Cuneo Gilbert & LaDuca, LLP ("CGL") and Del Mar Law Group ("DMLG")). Adding two additional law firms at this time is unnecessary and provides no value to the Class. Quite the contrary, it will harm the Class. Moreover, appointing Plaintiff Cabrera's attorneys as interim co-counsel would not only adversely affect the Class in this case, but those in future class actions as well because this Court would be

---

[2] Counsel for Plaintiff Cabrera make identical assertions in both of their supporting declarations that they "conducted significant independent investigation and analysis" prior to the filing of the Cabrera Action. See Declaration of Abbas Kazerounian, dated May 18, 2015, at ¶ 15 and Declaration of Joshua Swigart, dated May 18, 2015, at ¶ 10. [Docket No 28, #1 and #2 thereto]. Such statements, along with the patent similarity between the *Cabrera* and *Hofmann* complaints, foreclose the possibility that they were unaware of the *Hofmann* Action at the time the *Cabrera* Action was filed.

indirectly encouraging the duplication of existing class action complaints by attorneys hoping to commandeer cases from the original attorneys that spent the time and energy developing the legal theories and causes of action. Such duplicative suits not only add no value to a class, but discourage counsel from putting effort into developing suits.

Again, and as set forth in greater detail in the underlying Motion to Consolidate, CGL and DMLG (and only CGL and DMLG) should serve as Interim Co-Counsel because: (1) their investigations and industriousness led to the commencement of this litigation and its survival in the face of a formidable motion to dismiss from Defendant's counsel; (2) they are experienced class action attorneys who work well together; (3) they are collectively leaders in litigating class actions concerning consumer fraud, particular those brought under California law; and (4) they have the resources to diligently litigate these Actions to their conclusions.

## II.     ARGUMENT

### A.     Legal Standard

As this Court is well aware, Federal Rules of Civil Procedure ("FRCP") Rule 23(g)(3) provides that a court "may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3).  Where, as here, there are multiple class actions pending, appointment of interim class counsel "is necessary to protect the interests of class members" because it "clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *MCL*, § 21.11.

Attorneys appointed to serve as interim class counsel "must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). Although Rule 23 does not explicitly state what standards apply when appointing interim

class counsel, courts have applied the following factors set forth in Rule 23(g)(1)(A): (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *See Parkinson v. Hyundai Motor Am.,* 2006 WL 2289801, No. C06-0345 AHS, slip op. at *2 (C.D. Cal. Aug. 7, 2006). Other factors to consider include "the vigorousness of the prosecution of the lawsuits." *Sparano v. Lief*, No. 10CV2079 BTM BLM, 2011 WL 830109, at *2 (S.D. Cal. Mar. 3, 2011). No single factor is determinative; all factors must be considered. Advisory Committee Notes (2003 Amendments).

As set forth below, CGL and DMLG satisfy each of these criteria and are committed to fairly and adequately representing the interests of the class.

### 1. *CGL and DMLG Have Taken Significant Step to Advance this Litigation*

CGL and DMLG are the first attorneys to take any steps to investigate Plaintiff Hofmann's claims and to advance this litigation. CGL and DMLG filed the first suit in the nation alleging that Fifth Generation deceptively labeled and advertised Tito's Handmade Vodka, filing months before the *Cabrera* action was filed. In so doing, CGL and DMLG conducted the initial factual and legal research upon which the cases are based. CGL and DMLG have also begun the process of speaking with potential experts. In addition, CGL and DMLG vigorously opposed Fifth Generation's motion to dismiss the *Hofmann* case, devoting numerous hours to ensuring that all of Hofmann's claims survived. By contrast, Fifth Generation simply answered in the *Cabrera* action, having learned from its attempt to dismiss the *Hofmann* Action that moving to dismiss the *Cabrera* Action would be futile. Thus, CGL and DMLG not only laid the original groundwork for these cases to be brought; they also expended a significant amount of time and resources ensuring

4

that the cases would proceed to discovery.

Plaintiff Cabrera suggests that his action is not a mere copy of the Plaintiff Hofmann's, but one of several class actions filed by Plaintiff Cabrera's attorneys premised upon similar theories of fraud. But Plaintiff Hofmann commenced this action well before Plaintiff Cabrera's attorneys filed any of these similar cases.[3] Indeed, to Plaintiff Hofmann's knowledge, there was no "Handmade" litigation in the country against any alcohol manufacturer prior to the filing of the *Hofmann* Action on September 15, 2014.

Moreover, the *Cabrera* Action utilizes a Complaint that has major sections of *Hofmann* Complaint copied therein. For example, Paragraph 16 and 17 (and the related footnotes) in the *Cabrera* Complaint are nearly identical to sections in the *Hofmann* Complaint:

| Hofmann Complaint, ¶ 11: | Cabrera Complaint, ¶ 16: |
|---|---|
| On information and belief, the Vodka was made, manufactured and/or produced in "massive buildings containing ten floor-to-ceiling stills and bottling 500 cases an hour" 2 using automated machinery that is the antithesis of "handmade" and that is in direct contradiction to both the "Handmade" representation and the "Crafted in an Old Fashioned Pot Still" representation on the product. Discovery will further reveal the specific automated manner in which the Vodka is made. | However, on information and belief, Defendant's vodka was and is not "Handmade," but rather manufactured and/or produced in "massive buildings containing ten floor-to-ceiling stills" and "bottling 500 cases an hour" through the use of a mechanized and/or automated process, in contradiction of Defendant's claims prominently displayed on the label of its product that its vodka is "Handmade" and "Crafted in an Old Fashioned Pot Still."[1] Defendant's vodka is simply not "Handmade" as Defendant advertised to Plaintiff and other consumers similarly situated.[2] |

---

[3]   *Nowrouzi, et al v. Maker's Mark Distillery, Inc.*, No. 3:14-cv-02885-JAH-NLS (S.D. Cal.) was filed on December 8, 2014 and *Welk v. Beam Suntory Import Co., et al*, No. 3:15-cv-00328-LAB-JMA (S.D. Cal.) was filed on February 17, 2015. It is worth noting that, for reasons too complicated to detail here, these actions—though based on a similar theory as this one—are not nearly as strong as this case. Indeed, as Defendants noted in their submission, a court has already dismissed one action against Bean Suntory Import Co., which is essentially identical to the *Welk* case.

5
RESPONSE IN OPPOSITION TO COUNTER-MOTION TO APPOINT CO-LEAD COUNSEL
3:14-cv-02569-JM-JLB

| | |
|---|---|
| Hofmann Complaint, Image of Product:<br> | Hofmann Complaint, Image of Product:<br> |
| Hofmann Complaint, Footnote 2:<br>A 2013 article in Forbes magazine noted that the Forbes photographer was purposefully directed away by the Tito's brand manager from "massive buildings containing ten floor-to-ceiling stills and bottling 500 cases an hour and into the shack with the original still, cobbled from two Dr. Pepper kegs and a turkey-frying rig to cook bushels of corn into booze." | Cabrera Complaint, Footnote 1:<br>An article appearing in the July 15, 2013 issue of Forbes Magazine entitled "The Troubling Success of Tito's Handmade Vodka" noted that the Forbes photographer was purposefully directed away by the Tito's brand manager from "massive buildings containing ten floor-to-ceiling stills and bottling 500 cases an hour and into the shack with the original still." (http://www.forbes.com/sites/meghancasserly/2013/06/26/haunted-spirits-the-troublingsuccess-of-titos-handmade-vodka) |
| Hofmann Complaint, Footnote 1:<br>The Oxford Dictionary defines the term "handmade" as "[m]ade by hand, not by machine, and typically therefore of superior quality." | Merriam-Webster Dictionary defines the term "handmade" as "made with hands or by using hand tools" and Oxford Dictionary defines "handmade" as "made by hand, not by machine, and typically therefore of superior quality." |

    A second plaintiff's borrowing significant from the first plaintiff's complaint militates against the former being appointed lead counsel. *See In re Jones Soda Co. Sec. Litig.,* No. C07-1366RSL, 2008 WL 418002, at *3 (W.D. Wash. Feb. 12, 2008) [noting that, "in light of the allegation that the Banner complaint was copied from a complaint previously filed on behalf of another party, a determination of the appropriate lead counsel must include an inquiry into which counsel drafted the complaint and whether sufficient effort went into that undertaking"].

### 2. CGL and DMLG's Significant Experience Handling Class Actions, Other Complex Litigation, and Claims of the Type Asserted in This Action

CGL and DMLG possess a wealth of litigation experience. Combined, the two firms have successfully led large, multidistrict litigation and have demonstrated an ability to organize and manage large litigation (cooperatively with counsel for all of the involved parties). Other federal courts have recognized as much by appointing these attorneys to leadership positions in other MDLs and class actions, including consumer class actions. The law firms have worked together cooperatively and productively in other complex class actions, including other consumer cases, and will form an efficient and highly skilled group to represent the Plaintiff and Class members in this action. Declaration of John H. Donboli dated ("Donboli Decl."), at ¶ 2, fn1. [Docket No. 21, #3 thereto].

#### a. CGL

CGL has extensive experience leading and managing complex litigation. CGL devotes the majority of its practice to the representation of clients involved in consumer protection, antitrust, securities, corporate governance, and products liability complex and class action litigation. The firm has achieved success for a range of clients, by: helping to recover billions of dollars in shareholder litigation, obtaining compensation for Holocaust survivors, working to recover hundreds of millions of dollars for homeowners with defective construction materials, and, in several jurisdictions, ending the unconstitutional practice of jails' subjecting minor law violators to unnecessary strip searches. The firm has years of experience litigating and prosecuting complex class action such as this case, including such cases as the *Enron Securities Litigation* where the litigation recovered more than $7 billion for defrauded investors and CertainTeed's defective organic shingles litigation where the firm served as Co-lead Counsel in an MDL that secured a settlement valued at more than $700 million.

Jonathan W. Cuneo, the partner overseeing this litigation for CGL, has served as counsel in a number of significant cases including:

- *Mangini v. RJ Reynolds Tobacco Company*, 7th Cal. 4th 1057 (The first case to challenge the "Joe Camel" advertising campaign, resulting in the public release of documents showing the targeting of children. Congressman Henry Waxman referred to the attorneys as American heroes for their role in release of these documents.)
- *Dennis v. Metromail*, Texas Dist. Ct., No-9604451 (One of the most significant privacy cases in United States history, involving an information company contracting with Texas inmates to process private information.)
- *In re Enron Corp. Sec. Litig.*, S.D. Tex., No. H-01-3624 (Washington Counsel in litigation resulting in over $7 billion recovery, the largest recovery in securities fraud in history.)
- *Rosner, et al. v. United States*, S.D. Fla., No. 01-cv-1859 (The so-called "Gold Train" case, which involved the looting of the personal assets of Hungarian Holocaust victims and survivors by the United States Army after World War II, resulting in a statement of acknowledgement by the government and a $25.5 million settlement.)
- *Galanti, et al. v. The Goodyear Tire & Rubber Company*, D.N.J., No. 03-cv-209 ($340+ million recovery on behalf of homeowners who purchased allegedly defective radiant heating systems. Significantly, in CGL's role as lead counsel, it brought together over 20 law firms and three factions over a year and a half to forge a bi-national global settlement that was approved from the bench.)
- *Kwikset Corporation, et al. v. The Superior Court of Orange County, James Benson et al., Real Parties in Interest*, 51 Cal 4th 310 (2011) ) (clarifying the reach of California's Unfair Competition Law,

8

California Business and Professions Code sec. 17200. This California Supreme Court opinion is one of the most significant consumer protection opinions in the state.)

- *In re Automotive Wire Harness Systems Antitrust Litigation*, Case No. 2:12-md-02311-MOB (E.D. Mich. August 7, 2012) (Co-lead counsel representing auto dealers in more than 25 putative class actions.)
- Mr. Cuneo and CGL have also successfully represented California cities and counties, and the State of West Virginia.

Working alongside Mr. Cuneo is Taylor Asen, who brings the valuable added perspective of having also served as a law clerk to two federal judges, and who has worked on a variety of consumer fraud class actions in California and elsewhere.

### b. DMLG

DMLG is a consumer class action law firm situated in San Diego, California with significant experience litigating complex consumer class actions. John H. Donboli, the partner personally overseeing this case for DMLG, has been certified as class counsel in multiple California class action cases, including but not limited to:

- *Cleary v. Door to Door Storage, Inc.*, San Diego Superior Court ("SDSC"), Case No. GIC875359;
- *Goestl v. Thunder Power, Inc.*, SDSC, Case No. GIC879513;
- *Stewart v Channellock,* SDSC, Case No. 37-2008-00081963-CU-BT-CTL;
- *Paz v. Lights of America, Inc.,* SDSC, Case No. 37-2009-00091565-CU-BT-CTL;
- *Card v Bell Sports, Inc.*, SDSC, Case No. 37-2010-00083292-CU-BT-CTL.
- *Chambers v. Weber-Stephen Products, LLC,* SDSC, Case No. 37-

2011-00085919-CU-BT-CTL;

- *Paz v. Ideal Industries, Inc.,* SDSC, Case No. 37-2011-00087389-CU-BT-CTL;

- *Clark v The Nutro Company,* SDSC, Case No. 37-2011-00090424-CU-BT-CTL;

- *Hecht-Nielsen v. Lifetime Products, Inc.,* SDSC Case No. 37-2011-00089380-CU-BT-CTL; and

- *Kimberly Card v. Party City Corporation et al.*, SDSC Case No. 37-2012-00084838-CU-BT-CTL.

Donboli Decl., ¶ 2.

### 3.  *CGL and DMLG Have Significant Experience with the Applicable Law*

As described more fully above and in the previously filed declarations of Messrs. Cuneo and Donboli filed in support of the underlying Motion to Consolidate in the *Hofmann* Action, CGL and DMLG have substantial experience in handling complex litigation. Having served as lead counsel of MDL litigations and class actions, these two firms are well-versed in the issues related to Rule 23 class certification, large discovery plans, negotiating settlements, or trying the case to verdict if necessary.

Further, CGL and DMLG are highly familiar with California law, as well as the consumer protection laws of the other states. As such, CGL and DMLG possess the unique experience to defend the interests of both the Nationwide and California putative classes. In regards to California consumer protection laws (the violation of which is raised by both Plaintiffs Hofmann and Cabrera), Mr. Cuneo is especially well-versed as to California law because he is not only one of the top lawyer in the country (in general), but Mr. Cuneo litigated California class action cases through trial and all the way through two California Supreme Court hearings and a decision by the California Supreme Court (i.e., *Kwikset Corp. v. Superior*

*Court,* 51 Cal. 4th 310 (2011)) that is the leading California Supreme Court case to interpret California's Unfair Competition Law (B&P Section 17200) which is at issue in these cases. Mr. Donboli has similarly litigated numerous consumer fraud actions in California. Donboli Decl., at ¶ 2.

### 4. CGL and DMLG Have the Resources Necessary to Advance this Litigation

As stated previously, these two firms have served in leadership roles in various class actions, as well as other complex and resource-intensive litigations, and are knowledgeable about the resources necessary to adequately litigate this type of case. As demonstrated by their successful prosecution of other class actions, they have the necessary resources to prosecute this action and will devote those resources to the prosecution of this action in a manner that best serves the interests of the class members. CGL and DMLG are well-established firms with the financial wherewithal to comfortably support the litigation without the risk of putative class members being detrimentally impacted by resource constraints suffered by counsel.

CGL and DMLG are fully committed to allocating the attorney time and resources necessary to successfully litigate this case to a resolution in the best interests of the putative class members, while also cognizant of the fact that the unnecessary expenditure of time and resources harms the putative class.

### B. This Court Should Not Appoint Four Separate Firms as Interim Co-Counsel

Plaintiff Hofmann recognized prior to the filing of the Motion to Consolidate that some California courts actually rejected applications for appointment of multiple firms as interim co-counsel.[4] That being said, Plaintiff Hofmann believes

---

[4] For example, in *In re Cathode Ray Tube (CRT) Antitrust Litigation,* No. 07-5944 SC, 2008 WL 2024957, at * 1 (N.D. Cal. May 9, 2008), the court appointed a single firm as interim class counsel despite requests for appointment of multiple firms as "co-lead counsel." Similarly, in *Levitte v. Google, Inc.,* Nos. 08-03369, 08-03452, 08-03888, 08-04701, 2009 WL 482252, at

11

that the two-firm appointment of CGL and DMLG is in the best of interests of the Class.  The appointment of four separate law firms, however, to serve as interim co-counsel would be stretching things too far.

Again, appointing two firms (CGL and DMLG) is more than enough to represent the putative class. The factual and legal issues in the case are easily handled by these two firms. There are only two named plaintiffs, both of whom allege essentially the same causes of action under California consumer fraud statutes.[5]  All of the plaintiffs' claims arise from the same factual allegations. Fifth Generation, Inc. the only defendant in both cases. The conduct on which the claims are based is identical (marketing and selling vodka in the United States with an unlawful "Handmade" label).  The proposed class is limited to a finite group of consumers who purchased Fifth Generation, Inc.'s TITO'S Brand Handmade Vodka.  Moreover, pre-certification factual discovery is not likely to be burdensome or voluminous.  There is simply no need for four separate law firms to serve as interim co-counsel.

## III.    CONCLUSION

In the interests of judicial economy and for the reasons set forth above, Plaintiff respectfully requests that this Court deny Plaintiff Cabrera's Counter-Motion to have the law firms of Kazerouni Law Group, APC and Hyde & Swigart

/ / /

/ / /

/ / /

/ / /

---

*2 (N.D. Cal. Feb. 25, 2009), the court found that "although Plaintiffs contend that the scope of the proposed consolidated action favors a multi-firm structure…the putative class will benefit from having a single firm conduct the pre-class certification aspects of the litigation."

[5]     The *Hofmann* Action includes a cause of action for violations of the California Consumers Legal Remedies Act that is not included in the *Cabrera* Action and the *Cabrera* Action includes a cause of action for Intentional Misrepresentation (California common law) that is not included in the *Hofmann* Action.

12

to serve as interim co-counsel.

Dated:  June 1, 2015

DEL MAR LAW GROUP, LLP

By:   /s *John H. Donboli*
     JOHN H. DONBOLI
     DEL MAR LAW GROUP, LLP
     Attorney for Plaintiff GARY
     HOFMANN and all others similarly
     situated

CUNEO GILBERT & LaDUCA, LLP

By: /s *Jonathan W. Cuneo*
     JONATHAN W. CUNEO
     TAYLOR ASEN
     Attorneys for Plaintiff GARY
     HOFMANN and all others similarly
     situated