GREENBERG TRAURIG, LLP
Ricky L. Shackelford (SBN 151262)
*shackelfordr@gtlaw.com*
Matthew R. Gershman (SBN 253031)
*gershmanm@gtlaw.com*
1840 Century Park East, Suite 1900
Los Angeles, CA  90067
Tel:  (310) 586-7700
Fax:  (310) 586-7800

COOLEY LLP
Michelle C. Doolin (SBN 179445)
*mdoolin@cooley.com*
Darcie A. Tilly (SBN 239715)
*dtilly@cooley.com*
4401 Eastgate Mall
San Diego, CA 92121
Tel:  (858) 550-6000
Fax:  (858) 550-6420

ALEXANDER DUBOSE JEFFERSON &
  TOWNSEND LLP
Marcy Hogan Greer (*pro hac vice*)
*mgreer@adjtlaw.com*
515 Congress Ave., Ste. 2350
Austin, Texas 78701-3562
Tel: (512) 482-9300
Fax: (512) 482-9303

Attorneys for Defendant,
Fifth Generation, Inc.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY HOFMANN,<br><br>         Plaintiff,<br><br>v.<br><br>FIFTH GENERATION, INC., a Texas corporation; and DOES 1 through 100, inclusive,<br><br>         Defendants.<br><br>AND RELATED CASE | Case No:    14-CV-2569 JM (JLB)<br>Related Case No:   14-CV-2990-JM (JLB)<br><br>**REPLY IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>**Date:          October 19, 2015**<br>**Time:         10:00 a.m.**<br>**Courtroom:  5D**<br><br>Action filed:     Sept. 30, 2014<br>Removed:       October 28, 2014<br><br>Trial date:       October 31, 2016 |

# Table of Contents

I.   INTRODUCTION ...................................................................................................1

II.  LEGAL ARGUMENT............................................................................................3

    A.   Although Formality Is Not Required for the Safe-Harbor Doctrine, the COLA Procedure is Sufficiently Formal..........................................................3

        1.   The California Safe-Harbor Doctrine Is Not Subject to the Rigorous "Formality" Requirements of Federal Preemption........................................................................3

        2.   FDA statements at issue in *Von* Koenig.............................................4

        3.   Cases that have decided the issue have determined that approval of a COLA triggers the safe harbor ..........................................6

    B.   The COLA Is Both the Floor and the Ceiling of the Permissible Label.........7

    C.   The TTB Determined the Labels Were Not Misleading..............................8

    D.   The Economic Loss Rule Bars the Negligent Misrepresentation Claim. ...................................................................................................10

i

DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES
I/S/O MOTION FOR SUMMARY JUDGMENT -- Case No.:  14-cv-2569 JM (JLB)

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aliano v. Fifth Generation, Inc.*,
   No. 14C10086, 2015 WL 5675423 (N. D. Ill. Sept. 24, 2015) ............................6

*Aliano v. Louisville Distilling Co.*,
   No. 15C00794, 2015 WL 4429202 (N.D. Ill. Jul. 20, 2015)............................4, 6

*Brown-Forman Distillers Corp. v. Mathews*,
   435 F. Supp. 5 (W.D. Ky. 1976)..............................................................................7

*Cabo Distrib. Co. v. Brady*,
   821 F. Supp. 601 (N.D. Cal. 1992) .........................................................................5

*Chevron U.S.A. Inc. v. Nat. Res. Def. Council*,
   467 U.S. 837 (1984)....................................................................................2, 4, 5

*Cruz v. Anheuser-Busch, LLC*,
   No. CV 14-09670 AB, 2015 WL 3561536 (C.D. Cal. June 3, 2015) ..............6, 7

*Edmundson v. The Procter & Gamble Co.*,
   537 Fed. App'x 708 (9th Cir. 2013) .......................................................................9

*Ladore v. Sony Computer Ent. Am. LLC,*
   75 F. Supp. 3d 1065, 1075 (N.D. Cal. 2014)........................................................10

*Minkler v. Apple, Inc.*,
   65 F. Supp. 3d 810, 820 (N.D. Cal. 2014)............................................................10

*Nowrouzi v. Maker's Mark Distillery, Inc.*,
   No. 14CV2885 JAH, 2015 WL 4523551 (S.D. Cal. July 27, 2015) ................6, 9

*Pye v. Fifth Generation, Inc.*,
   Case No. 4:14-cv-493-RH/CAS,
   2015 WL 5634600 (N.D. Fla. Sept. 23, 2015) ............................................4, 6, 9

*Reid v. Johnson & Johnson*,
   780 F.3d 952 (9th Cir. 2015) ...................................................................................4

ii
DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES
I/S/O MOTION FOR SUMMARY JUDGMENT -- Case No.:  14-cv-2569 JM (JLB)

*Salters v. Beam Suntory Import, Inc.*,
  Case No. 4:14-CV-659-RH/CAS,
  2015 WL 2124939 (N.D. Fla. May 1, 2015) .................................................................9

*Skidmore v. Swift & Co.*,
  323 U.S. 134 (1944) ......................................................................................................4

*U.S. v. Mead Corp.*,
  533 U.S. 218 (2001) ..................................................................................................4, 5

*Vavak v. Abbott Labs, Inc.*,
  Case No. 10-1995 JUS,
  2011 WL 10550065 (C.D. Cal. June 17, 2011) ..........................................................10

*Von Koenig v. Snapple Beverage Corp.*,
  713 F. Supp. 2d 1066 (E.D. Cal. 2010) ...........................................................3, 4, 5, 6

*Welk v. Beam Suntory Import Co.*,
  Case No. 15-CV-328 LAB (JMA),
  2015 WL 5022527 (S. D. Cal. Aug. 21, 2015) .......................................................9, 10

*Wyeth v. Levine*,
  555 U.S. 555 (2009) ......................................................................................................4

**California Cases**

*Bronco Wine Co. v. Jolly*,
  33 Cal.4th 943 (2004) ...............................................................................................7, 8

*Cel-Tech Commc'ns., Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) .......................................................................................1, 2, 4, 7

*N. Am. Chem. Co. v. Superior Court*,
  59 Cal. App. 4th 764 (1997) .......................................................................................10

**Other State Cases**

*Kalitta Air, LLC v. Cent. Tx. Airborne Sys., Inc.*,
  C-96-2494-CW, 2009 WL 1636036 ...........................................................................10

**Federal Statutes**

27 U.S.C.
  § 205(e) .....................................................................................................................8, 9
  §§ 205(e)(1) & (4) .....................................................................................................5, 7

Federal Administrative Procedures Act. ...............................................................................2

**Other Authorities**

21 C.F.R. § 10.30(e)(1) ........................................................................................................5

27 C.F.R. § 5.34(a) ..........................................................................................................5, 7

27 C.F.R. §§ 5.34(a), 5.42(a)(1) ...................................................................................5, 8, 9

27 C.F.R. §§ 13.25-.27, 13.26(c), 13.27(c) ..........................................................................6

27 C.F.R. § 13.62 .................................................................................................................6

27 CFR 5.33(f) .....................................................................................................................9

iv

DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES
I/S/O MOTION FOR SUMMARY JUDGMENT -- Case No.:  14-cv-2569 JM (JLB)

## I. INTRODUCTION

In its Motion for summary judgment, Defendant Fifth Generation[1] demonstrated that, for almost two decades, the TTB has issued COLAs authorizing the use of the word "handmade" on the labels for Tito's Handmade Vodka. And the TTB has specifically addressed the use and meaning of "handmade," including during an audit in 2005-06 after which it took no further action to revise or limit the COLAs. Internal reports produced by the TTB provide the basis for its decision: "[u]pon our completion of all of the above, *we concluded that the reference to "handmade" on this label is [in] compliance with the labeling regulations we enforce and we did not find the term misleading*."[2] In the years since the audit, the TTB has approved numerous labels for Tito's Handmade Vodka using the company's trademark. These facts are undisputed. By obtaining the COLAs, Fifth Generation did all that it was required by federal law to do in order to be expressly permitted to sell Tito's Handmade Vodka with the approved labels.

The issued COLAs are vested property rights that cannot be collaterally challenged in a judicial proceeding. That is precisely what California's safe harbor is designed to prohibit—the use of California's UCL to "plead around" a legal bar by calling legally permitted conduct "unfair." Plaintiff does not address the property right or the authorities cited by Fifth Generation in this regard. Instead, in his Opposition, Plaintiff attempts to elevate the standards for the safe-harbor defense to a level never envisioned by the California Supreme Court—which created it—using arguments about federal preemption and federal agency-deference doctrines that California has not seen fit to engraft onto its safe harbor. Indeed, that court would not have reached the conclusion it did in *Cel-Tech*, because the basis for the safe harbor there—statutory authority to engage in certain conduct—was the same as it is here.

Plaintiff also argues that the TTB's action in approving Fifth Generation's COLAs was not "formal" enough to implicate California's safe harbor. Focusing primarily on

---

[1] For consistency, Fifth Generation will continue to use the terms it defined in its Motion for Summary Judgment. (Docket #47-1).
[2] Beveridge Decl. at Exhibit A-8 (emphasis added).

1 preemption cases, Plaintiff asserts that the safe harbor cannot apply unless his claim is preempted by federal law or the agency action is the equivalent of a rulemaking that would be entitled to deference under *Chevron*.[3] If California's safe harbor cannot apply unless the agency action at issue would be preempted, then it is difficult to imagine what purpose California's safe harbor could ever serve because when preemption applies, the state law is completely eclipsed by federal law, leaving no role for such a defense. And the suggestion that the administrative action must be sufficiently formal as to warrant *Chevron* deference before California's safe harbor applies is equally insupportable. *Chevron* is a deference doctrine applicable to federal agencies under the federal Administrative Procedures Act. It would be remarkable for the California Supreme Court to adopt federal law as the governing standard without saying so. And *Cel-Tech* says nothing of the sort. Instead, the test is whether state or federal law "***has permitted certain conduct or considered a situation and concluded no action should lie***," and in such cases, the "courts may not override that determination."[4] Here, the TTB has expressly permitted Fifth Generation to use every label for Tito's Handmade Vodka that has been affixed to vodka bottles sold at retail. The COLAs themselves are sufficient proof to bring Plaintiff's claims within the safe harbor, and the uncontroverted evidence before the Court confirms that the TTB considered precisely the claim Plaintiff brings here and found it to be in "compliance with [its] labeling regulations" and not "misleading."

Plaintiff next claims that the TTB's approval of the COLAs sets only the floor, and not the ceiling, such that California can impose more stringent requirements on its alcohol labels. But Plaintiff identifies no such California standard; if one existed, he would be able to bring an "unlawful"-prong claim and cite the controlling provision he claims was violated. Instead, Plaintiff relies on general UCL principles to try and undermine the TTB's determination that the Tito's Handmade Vodka label is not misleading. And here again, Plaintiff relies principally on a case involving preemption,

---

[3] *Chevron U.S.A. Inc. v. Nat. Res. Def. Council*, 467 U.S. 837 (1984).
[4] *Cel-Tech Commc'ns., Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal. 4th 163, 182 (1999) (emphasis added).

not California's safe-harbor doctrine, which is entirely off the mark. Fifth Generation does not assert that the TTB's COLAs in any way preempt California's alcohol-regulating laws. The safe harbor is instead a California-created antidote to the broad scope of "unfair" claims under the UCL.

As to the TTB's handling of this particular claim, Plaintiff claims that—notwithstanding the rigorous review and detail of its process—the TTB essentially abdicated its responsibility to regulate labels and protect consumers. That view is contradicted by the undisputed facts. The declaration on which Plaintiff places so much emphasis does not support Plaintiff's interpretation, nor does any legitimate review of the record. What it does show is that the TTB shares the conclusion of multiple courts throughout the country that "handmade" in the context of distilled spirits is non-actionable puffery. Summary judgment should therefore be granted.

## II. LEGAL ARGUMENT

### A. Although Formality Is Not Required for the Safe-Harbor Doctrine, the COLA Procedure is Sufficiently Formal.

#### 1. The California Safe-Harbor Doctrine Is Not Subject to the Rigorous "Formality" Requirements of Federal Preemption.

Contrary to Plaintiff's suggestion, this Court's prior order did not adopt the district court's "formality" requirement from *Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1074 (E.D. Cal. 2010)—that the regulative decision be "the result of a formal deliberative process akin to notice-and-comment rulemaking or adjudication." Order at 11 (Docket #15) (citing *Von Koenig*, 713 F. Supp. 23 at 1076). Instead, the Court noted, only with regard to the motion to dismiss, that Fifth Generation "d[id] not meaningfully address the distinctions" raised by *Von Koenig* and indicated further fact development at later stage in this proceeding would be needed to resolve the issue. *Id*. at 12. Now, Fifth Generation addresses that issue on summary judgment supported by the undisputed facts. Plaintiff's formality argument rests on *Von Koenig*'s comparison of the safe harbor to preemption. That part of *Von Koenig* was not supported by any prior

3

authority. And, as Plaintiff admits, other decisions, such as "*Pye* and *Aliano* do not even discuss the level of formality required for a regulatory action to trigger a statutory safe harbor." Opposition at 14. That is likely because Illinois and Florida, like California, do not equate safe harbor with preemption.

Plaintiff's Opposition admits preemption cases recognize a formality requirement because of federalism. Opposition at 8 ("The rule set forth in *Fellner* and *Reid* promotes federalism and a healthy respect for state laws...."). To protect federalism, courts recognize a presumption ***against*** preemption. *See Wyeth v. Levine*, 555 U.S. 555, 565 (2009). The purpose of formality is to ensure that a federal agency has methodically acted within the power delegated to it by Congress to create policy having the force of federal law. *Reid v. Johnson & Johnson*, 780 F.3d 952, 964 (9th Cir. 2015).

Federalism is not implicated by the state-created safe harbor. Safe harbor is not about the narrow circumstances where federal law replaces state law. Rather, it limits state law from prohibiting as "unfair competition" conduct has been permitted by either state or federal statutes or regulations. *See Cel-Tech Commc'ns., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999) (emphasis added). The California Supreme Court recognized the doctrine out of deference ***in favor*** of other laws that authorize the conduct in question. *Id.* ("Courts may not simply impose their own notions of the day as to what is fair or unfair."). Unlike preemption, imposing a formality requirement on the safe harbor does nothing to promote federalism or protect state's rights. The spirit of deference on which the safe-harbor doctrine was created compels the opposite result.

### 2. FDA statements at issue in *Von Koenig*.

Even if the safe-harbor doctrine did require some showing of formality, the regulatory action in this case would meet it.[5] COLA procedures are significantly more

---

[5] Ironically, Plaintiff cites *U.S. v. Mead Corp.*, 533 U.S. 218 (2001), as being "remarkably on point" in its holding that the U.S. Customs letter rulings in that case were not entitled to *Chevron* deference. Opposition at 10-11. Plaintiff fails to mention that the Supreme Court also held that those letters could be entitled to some deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), which holds that "an agency's interpretation may merit some deference, whatever its form, given the 'specialized

4

DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES
I/S/O MOTION FOR SUMMARY JUDGMENT -- Case No.: 14-cv-2569 JM (JLB)

formal than the agency letters in *Von Koenig* in a number of respects.

First, the issuance or denial of COLA is the end result of a formal regulatory procedure mandated by law before any label may be used in commerce. 27 U.S.C. §§ 205(e)(1) & (4); 27 C.F.R. §§ 5.34(a), 5.42(a)(1). The COLA is specific to *a label*, for *a product*, and for *a manufacturer*. It is not a general statement of guidance, subject to change or reinterpretation at any time. In fact, the COLA, unlike an FDA interpretive letter, creates a property right, *see Cabo Distrib. Co. v. Bra*dy, 821 F. Supp. 601, 609 (N.D. Cal. 1992), that has no analog in the FDA cases. And many of the COLAs for Tito's Handmade Vodka were issued after the TTB had conducted extensive, onsite audits of every aspect of Fifth Generation's business operations.

Second, the FDA enforcement in *Von Koeni*g was purely discretionary—taking into consideration available agency resources and other priorities. *See* 21 C.F.R. § 10.30(e)(1). By contrast, the FAAA and TTB regulations *require* the TTB to prohibit statements on labels that are false or misleading, including those specifically with regard to "manufacturing processes." 27 U.S.C. §§ 205(e)(1) & (4); 27 C.F.R. § 5.34(a). A COLA is an express "authorization" of the label; the product cannot be sold without the COLA. Moreover, in *Von Koenig*, the FDA declined to conduct a rulemaking because of resource limitations and other agency priorities, and the FDA's ad hoc enforcement of the term "natural" was considered as "not hav[ing] the force of law." 713 F. Supp. 2d at 1075-76. This is a critical distinction because in *Von Koenig*, the FDA's prior refusal to act on the use of the word "natural" did not amount to a formal approval of the word. *Id.* at 1074-75. And the FDA's action or inaction on the petition had no impact on the ability to sell products with "natural" on the label.

Third, *Von Koenig* noted in the FDA procedures the absence of a "deliberative

---

experience and broader investigations and information' available to the agency and given the value of uniformity in its administrative and judicial understandings of what a national law requires." *Mead*, 533 U.S. at 234 (quoting *Skidmore*, 323 U.S. at 139-40). Thus, contrary to Plaintiff's suggestion, *Chevron* formality is not necessary to trigger federal-deference doctrine.

5

process akin to notice and comment rulemaking ....." *Id.* at 1076. Yet the COLA process provides just that. It is a deliberative process that allows for comment by a "consumer or consumer group, or any other interested person" and requires the TTB to take appropriate action in response. 27 C.F.R. § 13.62. It provides a multi-step appeal procedure with judicial review. 27 C.F.R. §§ 13.25-.27, 13.26(c), 13.27(c).

### 3. Cases that have decided the issue have determined that approval of a COLA triggers the safe harbor.

Plaintiff also asserts that "[t]he majority of courts" have held that a COLA does not trigger the safe harbor. Opposition at 13. Both Plaintiff's analysis and math are wrong. The two cases he cites for the "majority" did not actually reach the issue of whether a COLA triggers the safe harbor, but instead followed this Court's reasoning that it is premature to decide the issue a motion to dismiss based solely on the pleadings. *See Aliano v. Louisville Distilling Co.*, No. 15C00794, 2015 WL 4429202, at *8 (N.D. Ill. Jul. 20, 2015) ("Based on the allegations in the complaint, we cannot find ***at this stage*** that TTB specifically authorized Louisville's use of the phrase 'hand crafted'...") (emphasis added); *Nowrouzi v. Maker's Mark Distillery, Inc.*, No. 14CV2885 JAH, 2015 WL 4523551, at *5 (S.D. Cal. July 27, 2015) (noting "where the Court is limited to considering the allegations set forth in the complaint" that it is "unpersuaded, as was Judge Miller, ***at this juncture***" that the UCL claims are barred) (emphasis added). Neither decision finally determined ***on the evidence*** that the safe harbor does not apply.

Even if those cases had decided the issue, they are no majority. Three other cases held that a COLA does trigger the safe harbor. *Cruz v. Anheuser-Busch, LLC*, No. CV 14-09670 AB (ASx), 2015 WL 3561536, at *4 (C.D. Cal. June 3, 2015); *Pye v. Fifth Generation, Inc.*, Case No. 4:14-cv-493-RH/CAS, 2015 WL 5634600, at *4 (N.D. Fla. Sept. 23, 2015); *Aliano v. Fifth Generation, Inc.*, No. 14C10086, 2015 WL 5675423, *4 (N. D. Ill. Sept. 24, 2015).[6]

---

[6] California's safe harbor governs Plaintiff's claims, but he seeks to represent a nationwide class of consumers. As noted, the courts in Illinois and Florida have already found their respective states' safe-harbor laws to bar claims like Plaintiff's, and many

6

In short, all of the cases that have definitively adjudicated the issue have held that a COLA in fact implicates the safe harbor. And they have done so on a much less developed record than exists with this motion. The Court should reject Plaintiff's invitation to be the first in the country to decline to apply the safe harbor in the face of evidence of a COLA issued after specific TTB investigation of the word "handmade."

### B. The COLA Is Both the Floor and the Ceiling of the Permissible Label.

Plaintiff argues that the FAAA sets a regulatory floor and not a ceiling, asserting that the TTB's jurisdiction over labeling is not exclusive. Multiple courts have held that the agency does have "exclusive jurisdiction" over labeling. *Cruz*, 2015 WL 3561536, at *4 ("The TTB has ***exclusive jurisdiction*** in regulating the labels on alcoholic beverages because Congress expressly granted exclusive authority to the Treasury Department who in turn delegated its duties to the TTB." (emphasis added)); *Brown-Forman Distillers Corp. v. Mathews*, 435 F. Supp. 5, 12 (W.D. Ky. 1976). An important part of that exclusive jurisdiction is in regulating labels that are false or misleading, specifically with regard to "manufacturing processes." 27 U.S.C. §§ 205(e)(1) & (4); 27 C.F.R. § 5.34(a).

Plaintiff relies on the *Bronco Wine Co. v. Jolly*, 33 Cal.4th 943 (2004), as rejecting a "nearly identical argument." Opposition at 15-16. That case, however, had nothing to do with the legal effect of a COLA. *Bronco Wine* considered whether Congress intended to regulate wine labeling so pervasively such that California's regulation of the use of the geographic term "Napa" on wine labels should be preempted. *Id.* at 950, 994. The California Supreme Court therefore analyzed the historical interface between California's wine labeling laws and the FAAA to determine whether enforcing the state law creates an obstacle to Congress' objectives. *Id.* at 956.[7] That is very different from whether the TTB

---

[7] Even if *Bronco Wine*'s analysis of the two regulatory regimes were applicable here, the state statute was specific as to the regulation of geographic-origin representations on labels regarding California wines. Here, Plaintiff offers a very general consumer protection statute against a very specific federal regulation. Plaintiff's claim is under the "unfair" prong of the UCL, and, as noted, *Cel-Tech* made clear that mere labeling a claim as "unfair" does not make it so or insulate it from the safe harbor, other states have similar doctrines that likewise apply.

has permitted the sale of Tito's Handmade Vodka with its approved labels. *Bronco Wine* has nothing to do with California's safe harbor and everything to do with preemption. And because preemption focuses upon the intent of the U.S. Congress—not that of the California Supreme Court—it cannot inform the state-created safe-harbor doctrine.

### C. The TTB Determined the Labels Were Not Misleading.

There is no question that the TTB thoroughly reviewed Fifth Generation's facility, distillation processes, and essentially every part of its business and concluded multiple times that the labels for Tito's Handmade Vodka—and in particular, the term "handmade"—were not misleading.[8] Plaintiff questions whether the facts surrounding Tito's label approval establish that the TTB actually considered the term "handmade" and found it not misleading. Plaintiff never explains how this could be so when federal law ***requires*** the TTB to determine whether label statements are false or misleading, specifically with respect to "manufacturing processes." 27 U.S.C. § 205(e); 27 C.F.R. §§ 5.34(a), 5.42(a)(1). This requirement undermines both of Plaintiff's arguments about the evidence as to whether the TTB specifically found "handmade" not misleading.

First, there is no "fact issue" as to whether the TTB specifically considered whether the term "handmade" is false or misleading or that the TTB has repeatedly issued COLAs for labels with that term since definitively deciding the issue in 2006. Although Plaintiff concedes there was evidence that the TTB determined that the term "handmade" complies with the labeling regulations and is not misleading, Opposition at 18,[9] he nonetheless asserts that the Scalese affidavit provides conflicting evidence.

---

[8] Plaintiff suggests Mr. Littlejohn's site visit had nothing to do with its decision because the TTB had "determined that 'Handmade' would be permitted on the label" before considering if the claim was factually accurate. Opposition at 20 n.15. The chronology in Mr. Beveridge's declaration shows that Mr. Littlejohn's surprise site inspection preceded his involvement as the newly announced agency contact on the audit by as much as a week. Beveridge Decl. ¶¶ 13-14. The TTB's own communications show Mr. Littlejohn became the contact person on or about January 17, 2006, while the "decision" was communicated to the TTB executives on January 19, 2006. *Id.* at Exhibit 8, pp. 036-038.
[9] Plaintiff's suggestion that this document has been compromised by the redactions made by TTB, Opposition at 19 n.14, is makeweight. There is no question that it evidences the decision-making at the highest levels of the TTB, and the findings are unambiguous.

8

DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES
I/S/O MOTION FOR SUMMARY JUDGMENT -- Case No.:  14-cv-2569 JM (JLB)

The Scalese affidavit is entirely consistent with the other evidence in demonstrating that the TTB determined "handmade" in the labels for Tito's Handmade Vodka is not misleading. It states that "TTB's labeling specialists do not verify claims such as 'handmade'" because "[t]hese terms are considered additional information, or 'puffery,' covered under 27 CFR 5.33(f)." Beveridge Decl. Exhibit 10 at 046. This makes sense. Legally, "puffery" is not verifiable and not actionable as false or misleading advertising. *See Edmundson v. The Procter & Gamble Co.*, 537 Fed. App'x 708, 709 (9th Cir. 2013); *see also* Motion at 10-11 (collecting cases). "Puffery" cannot be misleading.

By determining that "handmade" on these labels is puffery, the TTB **necessarily** decided the term is not false or misleading because the FAAA specifically requires it to determine whether label statements about "manufacturing processes" are false or misleading before approving a label. 27 U.S.C. § 205(e); 27 C.F.R. §§ 5.34(a), 5.42(a)(1). The TTB itself repeatedly questioned Fifth Generation's use of the term "handmade" and in 2005 threatened to require its removal. Beveridge Decl. ¶ 9. Scalese's statement that the TTB did not verify "handmade" because it was puffery is thus entirely consistent with other evidence that the TTB determined "handmade" is not misleading—as well as the conclusion of other courts who have considered "handmade" in the context of distilled spirits. *See Pye*, 2015 WL 5634600, at *2; *Salters v. Beam Suntory Import, Inc.*, Case No. 4:14-CV-659-RH/CAS, 2015 WL 2124939, *3 (N.D. Fla. May 1, 2015); *Nowrouzi*, 2015 WL 4523551, at *7; *Welk v. Beam Suntory Import Co.*, Case No. 15-CV-328 LAB (JMA), 2015 WL 5022527, at *3-4 (S. D. Cal. Aug. 21, 2015).

Second, Plaintiff undermines Scalese by asserting—without any basis—that she used the term "puffery" to mean something other than its legal meaning. There is no reason to infer, as Plaintiff suggests, that Scalese meant that "handmade" is an objectively verifiable term—only that the TTB declined to adopt any particular standard at this time. *See* Opposition at 20-21. His interpretation ignores the legal meaning of "puffery" and disregards the TTB's statutory mandate. The TTB cannot jettison its legal responsibility to determine whether labels are false or misleading by simply declining to

9

adopt any standards. Nor should this Court infer that the TTB abdicated its statutory responsibility in issuing the COLAs for Tito's Handmade Vodka without considering "handmade"—especially when considering the TTB's attention to this specific issue.

### D. The Economic Loss Rule Bars the Negligent Misrepresentation Claim.

California's economic loss rule bars tort claims, including negligent misrepresentation, based upon a purchase of goods where the only injury is purely economic. *See N. Am. Chem. Co. v. Superior Court*, 59 Cal. App. 4th 764, 780 (1997); *see also Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 820 (N.D. Cal. 2014); *Welk,* 2015 WL 5022527, at *5; *Ladore v. Sony Computer Ent. Am. LLC,* 75 F. Supp. 3d 1065, 1075 (N.D. Cal. 2014); *Vavak v. Abbott Labs, Inc.*, Case No. 10-1995 JUS, 2011 WL 10550065, at *5-6 (C.D. Cal. June 17, 2011). In his Opposition, Plaintiff fails to distinguish *Kalitta Air*. As that case demonstrates, the economic loss doctrine applies ***unless*** there are facts that create a special relationship between the buyer and seller. *Kalitta Air, LLC v. Cent. Tx. Airborne Sys., Inc.*, C-96-2494-CW, 2009 WL 1636036), at *5-8 (N.D. Cal. June 8, 2009).[10]

DATED: October 9, 2015

Respectfully submitted,
GREENBERG TRAURIG, LLP

By: /s/ Ricky L. Shackelford
Ricky L. Shackelford
Matthew R. Gershman
Attorneys for Defendant
Fifth Generation, Inc., d.b.a.
Tito's Handmade Vodka
E-mail: *shackelfordr@gtlaw.com*
*gershmanm@gtlaw.com*

---

[10] Plaintiff erroneously suggests that Fifth Generation's motion exceeds the scope of the scheduling order by extending to the negligent misrepresentation claim. The TTB defined as a matter of law what the labels for Tito's Handmade Vodka can say, and that decision effectively precludes any "special relationship" that would be required for the negligent misrepresentation claim to proceed. Thus, this claim too fits within the scope of the scheduling order.